**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Scottie Lee ZELAYA, Defendant–Appellant.**

**No. 95–10291.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1997.

Decided June 2, 1997.

Jeffrey L. Staniels, Chief Assistant Federal Defender, Sacramento, California for appellant.

Richard Pachter, Assistant United States Attorney, Sacramento, California for appellee.

Before: HUG, Chief Judge, THOMPSON and KLEINFELD, Circuit Judges.

## OPINION

HUG, Chief Judge.

Appellant Scottie Lee Zelaya appeals from the 37–month sentence imposed following his guilty plea and subsequent conviction on a charge of bank robbery, in violation of 18 U.S.C. § 2113(a). Because we conclude that the district court improperly applied a sentence enhancement in determining Zelaya's sentence, we vacate Zelaya's sentence and remand for resentencing.

### I. Background

The facts surrounding the bank robbery for which Zelaya pled guilty are not in dispute. On January 6, 1995 Gary Motz robbed a Wells Fargo Bank branch in Stockton, California, using a chrome-plated starter pistol. During the course of the robbery, Motz said to a teller "I'm going to rob you today," and passed her a note that read: "If you push the alarm I'm going to kill you and all of us." Motz escaped from the bank with $1,995 in cash.

Zelaya was waiting outside the bank in a getaway car. Police located the car using eyewitness information, and discovered that it belonged to a nearby car dealership. Motz and Zelaya had obtained the car by representing to the dealer that they wished to take it for a test drive. Because Motz had provided his telephone number to the car dealer before taking the "test drive," police had little trouble finding Motz and Zelaya at Motz's apartment. Both men were arrested and charged with bank robbery.

Zelaya agreed to plead guilty to one count of aiding and abetting a bank robbery. The presentence report recommended a two-level enhancement under the Sentencing Guidelines based upon Motz's making an express threat of death to the bank teller during the robbery. Both the Government and defense counsel objected to the enhancement, contending that Zelaya had no reason to expect that Motz would make that threat while carrying out the robbery. Notwithstanding, the district court found that the enhancement was appropriate, and sentenced Zelaya accordingly. Zelaya now appeals his sentence, challenging only the application of the enhancement.

## II. Discussion

The district court applied the enhancement provision found at § 2B3.1(b)(2)(F), which provides that a robbery sentence should be increased by two levels if "an express threat of death was made" during the course of the robbery. Because Zelaya was convicted as an accomplice to Motz's bank robbery, the application to his sentence of the death threat enhancement is governed by USSG § 1B1.3(a), which states that "in the case of jointly undertaken criminal activity" the sentencing court should take into account "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction."

Thus the district court, applying § 2B3.1(b)(2)(F) by way of § 1B1.3(a), must first determine the scope of the criminal activity that the particular defendant agreed, either explicitly or implicitly, to undertake jointly. USSG § 1B1.3 Application Note 2. The court must then determine whether the conduct that forms the basis of the enhancement (here, Motz's death threat) (1) occurred during the course of the criminal activity; (2) was done "in furtherance of" the criminal activity; and (3) was "reasonably foreseeable in connection with" the criminal activity. Id.

■ There is no dispute that Motz's death threat occurred during the course of, and was done in furtherance of, the bank robbery. Zelaya contends, however, that it was not "reasonably foreseeable" to him that Motz would make the death threat during the course of the robbery.

The district court pointed to no facts peculiar to this bank robbery that would support the finding of foreseeability. To the contrary, the circumstances of this robbery, as reflected in the record, appear to point against such a finding: (1) Motz attested that he never told Zelaya about a death threat before the robbery and did not himself know what he would say once inside the bank; (2) it was not established that Zelaya knew that Motz would use a weapon to carry out the robbery; and (3) there was very limited discussion between the two men about the robbery prior to its execution.

Instead, the district court appeared to conclude that the threat was foreseeable based upon its observation that in *any* bank robbery the robber is "going to have to do something to intimidate the teller," and that, given the fact that the robber must make some intimidating statement, an express death threat is reasonably foreseeable.

■ We conclude that a finding of reasonable foreseeability must be based upon something more than the district court's observations about bank robberies in general. *C.f. United States v. Castaneda,* 9 F.3d 761, 767 (9th Cir.1993) (despite recognized nexus between guns and drugs, there is no presumption that guns are foreseeable in drug transactions, and the burden of proving foreseeability is on the Government). Indeed, it would make little sense for the Commission to have fashioned a robbery enhancement the basis for which could properly be implied from the fact of the robbery alone. If this were the Commission's intent, it could simply have provided for a two-level enhancement to an accomplice's sentence whenever it is determined that the perpetrator made an express death threat during the robbery. Further, the Commission's commentary indicates that the enhancement should apply only in particularly egregious cases: "[t]he intent of the [death threat] provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly

greater fear than that necessary to constitute an element of the offense of robbery." USSG § 2B3.1 Application Note 6. We cannot agree with the district court's reasoning that in every bank robbery the perpetrator's accomplice reasonably can foresee an express death threat being made.

In support of the district court's determination the Government points to Application Note 2 to § 1B1.3, which states:

Note that the criminal activity that the defendant agreed to jointly undertake, and the reasonably foreseeable conduct of others in furtherance of that criminal activity, are not necessarily identical. For example, two defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim. The second defendant is accountable for the assault and injury to the victim (even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone) because the assaultive conduct was in furtherance of the jointly undertaken criminal activity (the robbery) and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

The Government correctly states that this court has applied this application note to conclude that a defendant-accomplice could reasonably foresee an injury to a victim as part of a jointly undertaken bank robbery. See United States v. Luna, 21 F.3d 874 (9th Cir.1994). However, in Luna, we stated that the facts of that case—a jointly undertaken bank robbery with resulting injuries to victims—fit the application note precisely. Id. at 884. Such is not the case here.

Moreover, we noted in Luna that the peculiar facts of the case supported the district court's foreseeability determination:

even if [the application note] were not dispositive of the matter, [the defendant] had recently participated in another robbery in which victims were dragged around and pulled by the hair. Under such circumstances, [the defendant could] hardly claim that bodily injury was not foreseeable.

Id. Such fact-specific inquiry has consistently been the focus of our foreseeability analysis in similar cases. See, e.g., United States v. Shaw, 91 F.3d 86, 89 (9th Cir.1996) (physical restraint of bank robbery victims "reasonably foreseeable" because defendant was under orders from cohort to make sure nobody entered or left the bank during robbery, and to "pull in" anybody from the parking lot); United States v. Lipsey, 62 F.3d 1134, 1137 (9th Cir.1995) (use of gun during robbery foreseeable because defendant pled guilty to armed robbery and saw one cohort hand another a pistol before the robbery); United States v. Garcia, 909 F.2d 1346, 1349–50 (9th Cir.1990) (cohort's possession of gun during drug transaction foreseeable because of the amount of drugs involved and the length of negotiations leading up to the transaction); United States v. Willis, 899 F.2d 873, 875 (9th Cir.1990) (cohort's possession of gun during drug transaction reasonably foreseeable to accomplice because cohort was wearing gun in waistband, and because there were only a few co-conspirators, suggesting that each knew the others' methods of operation).

■ We hold that the district court's determination, that an express threat of death was reasonably foreseeable, must be supported by the particular facts and circumstances of the underlying bank robbery. When the district court determines, based upon such facts and circumstances, that such conduct was "reasonably foreseeable," that determination is entitled to great deference. However, where, as here, the district court points to no facts peculiar to the underlying bank robbery that would support a finding of foreseeability of the express threat of death, the court has committed reversible error.

We **VACATE** Zelaya's sentence and **REMAND** to the district court for resentencing in light of our holding.

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent. I would defer to the district judge's exercise of discretion regarding the express threat of death enhancement.

I do not see much of a distinction between this case and the quoted language in Application Note 2, U.S.S.G. § 1B1.3. The Applica-

tion Note says that where two defendants agree to commit a robbery, it is foreseeable to the person being sentenced that his accomplice will injure a victim, *even though the person being sentenced had cautioned his accomplice not to hurt anyone.* The reason is that hurting someone "was reasonably foreseeable in connection with that criminal activity (given the nature of the offense)." The language, "given the nature of the offense," suggests that the nature of the offense is enough to support foreseeability.

In the case at bar, the district judge's reasoning was parallel to the Commissioners' reasoning. He reasoned that if a person agrees with another to rob a bank, it is reasonably foreseeable in connection with that particular kind of criminal activity, bank robbery, that the other robber may threaten to kill someone.

It is not as though the enhancement applies to any bank robbery. It applies only where there is an "express threat of death." U.S.S.G. § 2B3.1(b)(2)(F). An implied threat, which perhaps is present in any robbery, will not suffice. Without an express threat of death, neither the robber who goes inside nor the getaway car driver is subject to the enhancement. But if the robber who goes inside expressly threatens to kill someone, the getaway driver is in no better position to say he did not foresee what took place than the hypothetical robber in the Application Note.

There is no question here that an express threat of death was made. The robber who went inside said "if you push the alarm, I'm going to kill you." A threat was more foreseeable in this case than in the hypothetical case presented in the Application Note. In the hypothetical, the criminals discuss injury to victims in advance and the defendant says not to do it. But in the case at bar, they did not discuss death threats and Zelaya did not tell Motz not to do it. Also, Zelaya said he and Motz had been on a methamphetamine toot for several days, and snorted more shortly before the robbery. If a person drives his friend to a bank, and minds the getaway car as his hopped up friend goes into the bank to rob it, I do not think it is unforeseeable that his hopped up friend will go a bit overboard and say something rash.

The case at bar is not distinguishable from *United States v. Shaw*, 91 F.3d 86, 89 (9th Cir.1996). There we followed the Application Note and imposed an enhancement, even though the criminal being sentenced did not know what his accomplices were going to do. Likewise, the Tenth Circuit affirmed an express threat of death enhancement with nothing to support foreseeability of the accomplice's conduct beyond the bank robbery itself, in *United States v. Lambert*, 995 F.2d 1006 (10th Cir.1993). In addition to the Application Note already discussed, the Tenth Circuit points to one of the illustrations in the Application Notes: a getaway driver is accountable for an injury by the robber who went inside, because it is "reasonably foreseeable in connection with that criminal activity (given the nature of the offense)." U.S.S.G. § 1B1.3, illustration (b)(1).

I am sympathetic to the view that an express threat of death should enhance the sentence only of the person who made it, and those accomplices who planned on its being made. Though a threat of death may be the implied inducement to give up money in any robbery, most people would have a sense of crossing the Rubicon when they voiced the words, "I am going to kill you." But I do not think this view is the law. The law appears to be clear, under the "given the nature of the offense" language in the Application Note, the hypothetical cases in the Application Notes, *Shaw*, and *Lambert*, that a person who joins in robbing a bank has to foresee the risk that his accomplices may threaten to kill someone, just from the nature of the crime. If, and only if, the express threat is made, then the enhancement applies to all the robbers.