**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CINDY LEE GALVAN,
                        *Petitioner,*

v.

THE ALASKA DEPARTMENT OF
CORRECTIONS,
                        *Respondent.*

No. 03-35083

D.C. No.
CV-01-00285-JWS

OPINION

Appeal from the United States District Court
for the District of Alaska
John W. Sedwick, District Judge, Presiding

Argued and Submitted
December 1, 2003—Seattle, Washington
Submission Vacated December 15, 2003
Resubmitted April 16, 2004

Filed February 9, 2005

Before: Andrew J. Kleinfeld, Ronald M. Gould, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Kleinfeld

## COUNSEL

Mary C. Geddes, Assistant Federal Defender, Anchorage, Alaska, for the petitioner.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, Alaska, for the respondent.

## OPINION

KLEINFELD, Circuit Judge:

This habeas corpus appeal turns on exhaustion.

Facts

We take the facts from the Alaska Court of Appeals memorandum opinion and judgment affirming on direct appeal.[1]

In 1989, Galvan and her boyfriend, Anthony Garcia, killed a man in Colorado and fled to Alaska. A week after arriving in Juneau, they robbed and murdered another man. This case arises out of that Juneau murder.

Galvan's sentence was harsher than the Alaska "benchmark" for second degree murder because the judge considered her unusually dangerous and because her crime "approached the blameworthiness" of first degree murder. The dangerousness had to do with Galvan's history as well as the crime for which she was being sentenced. According to charges pending in Colorado, Galvan had brought another woman, helpless from intoxication, home from a bar, where she beat her with brass knuckles, pounded her head on the floor, and stole her money. Then, with the aid of a juvenile, Galvan took off the victim's clothes, cut off her hair, poured salt into her wounds, and threw her naked into the February night.

A few months later, still in Colorado, Galvan and her boyfriend reacted to what they felt to be disrespect by murdering a man. Galvan lured the man into a bathroom, her boyfriend came up behind the victim and beat him to death with a hammer, and Galvan cleaned the bathroom to obliterate the evidence.

The Juneau murder occurred a week after the couple arrived in Alaska. Galvan and her boyfriend needed money and decided that a robbery was the way to get it. Galvan rang the doorbell of a secluded home. When the victim opened the door, she and her boyfriend forced their way in. The boy-

---

[1] *Galvan v. State*, Mem. Op. & J. No. 2456 (Alaska App., July 8, 1992) (unpublished).

friend then stabbed the victim twenty times as he begged for his life, while Galvan took the victim's money from his wallet.

Though Galvan was charged with first degree murder, her lawyer got her a plea agreement for second degree murder. But after she pleaded no contest, she started a campaign—still continuing fifteen years after the murder—of blaming her conviction and sentence on her attorneys, a roll call of distinguished lawyers, two of whom have since been appointed to the Superior Court of Alaska. (She has also sought post-conviction relief on numerous other grounds, not raised in, or relevant to her federal habeas petition.) The lawyer who negotiated her plea moved to withdraw as counsel after Galvan sought to have the plea set aside on account of ineffective assistance of counsel. A second retained lawyer moved to withdraw because he had accepted Galvan as a client on condition that she not pursue what he saw to be a meritless claim of ineffective assistance, but then she persisted in urging it. The court appointed a third lawyer. Galvan then repeatedly and unsuccessfully moved to set aside her plea. Testimony was taken in the Alaska Superior Court on Galvan's claim of ineffective assistance, findings of fact were made (including that Galvan was not credible "on virtually every important debated statement of fact"), and the claim was decided against her, and affirmed on appeal. Galvan petitioned the Alaska Supreme Court to review the portion of the Alaska Court of Appeals decision that affirmed her sentence, but not the portion that allowed the plea to stand despite her claim of ineffective assistance of counsel.

Galvan then sought post-conviction relief in the Alaska courts, claiming that ineffective assistance of counsel had led her to plead guilty to second degree murder. The Alaska Superior Court denied her petition. She then appealed. Although Galvan mentioned in the first sentence of her brief to the Alaska Court of Appeals that she had a right to counsel under the federal and state constitutions, all her arguments

were based on Alaska law, specifically that the various Alaska Supreme Court and Alaska Court of Appeals cases laying out the contours of the right to counsel were not satisfied. The Court of Appeals carefully examined all the evidence and noted that although her lawyer told Galvan that, to get a favorable sentence, she should cooperate with the authorities and distance herself from her boyfriend, Galvan did the opposite. She continued to exchange love letters with her boyfriend while awaiting sentencing, and talked with her boyfriend about "taking care" of one of the state's witnesses. There is nothing in the Court of Appeals decision regarding federal constitutional law.

Galvan then petitioned for review to the Alaska Supreme Court. This petition controls the outcome of her federal case, because, whether she had raised it or not in the lower courts, Galvan had to raise her federal claim in her petition to Alaska's highest court to exhaust her federal constitutional claim. In a well-written, counseled petition (by the Alaska Public Defender Agency), Galvan makes these arguments: (1) her lawyer in the trial court gave her overly optimistic advice regarding the sentence she could expect; (2) she should have been allowed to withdraw her plea because the advice amounted to ineffective assistance of counsel; (3) her lawyer did not warn her that the sentencing judge might restrict her parole eligibility; and (4) her lawyer gave her bad advice that caused her to file her motion to withdraw her plea later than she should have, making it harder to win. Of the twelve citations to cases in her petition, all but one are to decisions of the Alaska Supreme Court and the Alaska Court of Appeals. For her explanation of what constitutes ineffective assistance of counsel and what remedies are appropriate, Galvan relies entirely upon Alaska law. The petition is mostly a careful examination of the Alaska standards for what an attorney must tell a client.

The petition's only mention of federal law comes in the

course of distinguishing an Alaska case. The Alaska case[2] held that a first degree murderer's erroneous belief that he would be eligible for parole during the first twenty years of his sentence did not make his plea involuntary.[3] Galvan sought to withdraw her plea on the ground, among others, that she did not realize when she entered it that the Superior Court might restrict her eligibility for parole. Galvan argued that the Alaska case should be distinguished because it involved a defendant's "unilateral subjective impression," but "there is a difference between not giving any advice and giving misinformation," as she claimed occurred in this case. To illustrate this factual distinction, Galvan devoted this one sentence in her brief to discussing a federal case: "In *Strader v. Garrison*,[4] the fourth circuit held that when a defendant is grossly misadvised as to parole eligibility, and is prejudiced by reliance on the incorrect advice, plea withdrawal is the appropriate remedy." Galvan's petition does not mention the Sixth Amendment to the United States Constitution.

The Alaska Supreme Court denied her petition, and Galvan filed this federal petition for a writ of habeas corpus. The well-written petition by the federal defender clearly claims, citing federal cases, that Galvan's federal constitutional rights to the effective assistance of counsel and to due process of law were violated by her lawyer's representation and her consequent "involuntary" guilty plea. The district court dismissed the petition for failure to exhaust state remedies, and Galvan appeals.

Analysis

[1] Congress has commanded that, where there is an available and effective state corrective process, and a federal petitioner for a writ of habeas corpus has not exhausted the

---

[2]*Risher v. State*, 523 P.2d 421, (Alaska 1974).

[3]*Id.* at 426.

[4]*Strader v. Garrison*, 611 F.2d 61, 64-65 (4th Cir. 1979).

remedies available in the state courts, the petition "shall not be granted."[5] The Supreme Court has explained this exhaustion requirement as being designed to further "comity" by giving the "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts."[6]

[2] Galvan argues that she made her partial reliance on federal constitutional law clear to the intermediate Alaska Court of Appeals. Had she failed to do so, that would go toward lack of exhaustion, but her having done so cannot establish exhaustion. Rather, Galvan must have exhausted her claim in her petition to the Alaska Supreme Court. The Court in *O'Sullivan v. Boerckel* holds that "a state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement."[7] Likewise, *Baldwin v. Reese* holds that a "prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."[8] The Supreme Court in *Baldwin* reversed a decision of ours that had held it was enough that the prisoner had raised the claim in a lower court whose opinion the state supreme court could read. The Supreme Court held that the petitioner had to alert the state supreme court to the claim, and could not rely on the opinion of the intermediate appellate court to do so.[9] Because Galvan did not claim in her petition to the Alaska Supreme Court that her federal constitutional right had been violated, it does not matter what she did in the Alaska Court of Appeals. That she did assert a Sixth Amendment claim in the Alaska Court of Appeals, but did not in her

---

[5]28 U.S.C. § 2254(b)(1).

[6]*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[7]*Id.* at 839-40.

[8]*Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 1349 (2004) (internal quotation marks and citations omitted).

[9]*Id.* at 1351.

petition to the Alaska Supreme Court, supports an inference that she chose *not* to exhaust her federal claim in state court for strategic reasons, not that she *did* exhaust.[10]

Galvan also argues that the leading Alaska case on ineffective assistance, *Risher v. State*, was derived from and is the same as the federal constitutional requirement. That argument is unpersuasive for three reasons.

[3] First, Galvan did not cite *Risher* in her petition to the Alaska Supreme Court. She cited it only to the Alaska Court of Appeals. Second, citation to a state case that discusses federal precedents does not necessarily put the state supreme court on notice that the petitioner is claiming a violation of a federal right. We so held in our en banc decision in *Peterson v. Lampert*. In *Peterson*, counsel had cited two state cases analyzing the federal constitutional right, but we held that "a fair reading of Peterson's counseled petition was that the cases were cited only to support a state-law claim."[11] Among our reasons were that "such omission may be a strategic choice by counsel" and that "[a]ll petitions must be read in context and understood based on the particular words used, and we therefore cannot lay down a simple, bright line rule."[12]

[4] Third, had the Alaska Supreme Court wondered whether, by citing *Risher*, Galvan meant to claim a violation of her federal Sixth Amendment right to the effective assistance counsel, a reading of *Risher* would have suggested that

---

[10]*Peterson v. Lampert*, 319 F.3d 1153, 1156, 1159 (9th Cir. 2003) (en banc) ("Especially here, where a counseled petitioner raised both the state and federal issues in his briefing before the court of appeals, but then omitted the federal issue before the Oregon Supreme Court, there is reason to conclude that such omission may be a strategic choice by counsel not to present the federal issue in the hope of convincing the Oregon Supreme Court to exercise its discretion to review.").

[11]*Id.*

[12]*Id.*

she was not. *Risher* came down ten years before *Strickland v. Washington*,[13] and adopts for Alaska a different standard than *Strickland*. *Risher* cites past Alaska Supreme Court decisions, a Cornell and Virginia Law Review article, and non-binding cases from the Third, Sixth, and District of Columbia Circuits, as well as cases from the Southern District of New York, and the Supreme Court of West Virginia, to promulgate its standard. And Risher, as we explain below, formulates a prejudice standard entirely different from, and more liberal to a petitioner than, the federal standard. Although *Risher* held that the defendant's rights under both the Alaska and United States Constitutions had not been violated, because *Risher* establishes state law quite different from federal law, Galvan's citation to *Risher* emphatically emphasized that her claim was brought under the Alaska Constitution, not the United States Constitution.

[5] Galvan's non-federalization of her ineffective assistance claim may well have been, just as we noted in *Peterson*, a strategic choice, not an accidental omission. Alaska law in this respect, as in others,[14] is more protective of defendants' rights than the federal constitutional minimum. The *Risher* standard of ineffective assistance is that the lawyer must perform at least as well as a lawyer with "ordinary training and skill in the criminal law,"[15] while *Strickland* requires only that

---

[13]*Strickland v. Washington*, 466 U.S. 668 (1984).

[14]*See, e.g.*, *RLR v. State*, 487 P.2d 27, 35 (Alaska 1971) (holding that in Alaska, "children are constitutionally entitled to a jury trial in the adjudicative state of a delinquency proceeding"); *Ravin v. State*, 537 P.2d 494, 511 (Alaska 1975) (holding that "possession of marijuana by adults at home for personal use is constitutionally protected"); *State v. Glass*, 583 P.2d 872, 875 (Alaska 1978) (holding that under the Alaska Constitution, "one who engages in private conversation is similarly entitled to assume that his words will not be broadcast or recorded absent his consent or a warrant"); *State v. Jones*, 706 P.2d 317, 322-24 (Alaska 1985) (refusing to abandon the more protective *Aguilar-Spinelli* two-prong probable cause test, *see Spinelli v. United States*, 393 U.S. 410 (1969), for the *Illinois v. Gates*, 462 U.S. 213 (1983), "totality of the circumstances" test).

[15]*Risher*, 523 P.2d at 424.

the lawyer did not make "errors so serious that counsel was not functioning as the 'counsel' guaranteed [t]he defendant by the Sixth Amendment,"[16] i.e., that counsel's conduct "on the facts of the particular case, viewed as of the time of counsel's conduct . . . in light of all of the circumstances, were outside the wide range of professionally competent assistance."[17] The *Risher* standard of prejudice is that the defendant need only establish "a reasonable doubt that the incompetence contributed to the outcome,"[18] while *Strickland* requires that "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[19] Thus there would not be much chance of establishing a federal constitutional violation if petitioner could not establish a state constitutional violation. A capable attorney might well seek to keep an Alaska court's attention on the Alaska precedents, and avoid confusing the issue with the generally less favorable federal authorities.

This is not to say that without petitioner's help, the Alaska Supreme Court could not have been expected to spot the issue of ineffective assistance of counsel under the federal constitution. Of course it could, but any judge reading the brief, and noticing its failure to mention the Sixth Amendment and *Strickland*, would infer that petitioner elected to make her claim under the state constitution rather than the federal constitution. "[T]he petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is."[20]

---

[16]*Strickland*, 466 U.S. at 687.

[17]*Id.* at 690.

[18]*Risher*, 523 P.2d at 425.

[19]*Strickland*, 466 U.S. at 694.

[20]*Lyons v. Crawford*, 232 F.3d 666, 668-69 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

Courts generally do not decide issues not raised by the parties.[21] If they granted relief to petitioners on grounds not urged by petitioners, respondents would be deprived of a fair opportunity to respond, and the courts would be deprived of the benefit of briefing, so generally courts limit themselves to resolving the issues the parties put before them, as opposed to the issues they spot outside what the parties elect to raise.

[6] As for petitioner's single sentence with its single citation to federal law in her petition to the Alaska Supreme Court, we read it the same way that the magistrate judge and the district court did — that the Fourth Circuit case, *Strader*, was cited to support Galvan's argument that her lawyer performed below the Alaska minimum standard. She did not say that she was deprived of her Sixth Amendment right to the effective assistance of counsel, and that that contention was supported with the Fourth Circuit case. The problem with Galvan's argument is not particularly the sparseness of federal law in her petition to the Alaska Supreme Court. Rather, the problem is the context in which Galvan cited her sole federal authority. Galvan said, in the context of an argument about Alaska constitutional law, that an Alaska case on the collateral consequences of a conviction should be distinguished on the basis of a factual difference, the importance of which was illustrated by the Fourth Circuit case. Thus Galvan's case for exhaustion is weaker than the one we rejected in *Lyons*, where we held that a "general reference in [a] state habeas petition to . . . 'ineffective assistance of counsel' . . . lacked the specificity and explicitness required for the purported federal constitutional dimension of such claims to have been 'fairly presented' to the [state] courts."[22]

---

[21] *See, e.g.*, *Gates v. City of Tenakee Springs*, 822 P.2d 455, 460 (Alaska 1992) (refusing to decide claims that a party raised below, but did not address in the party's brief to the Alaska Supreme Court).

[22] *Lyons*, 232 F.3d at 669-70.

**[7]** Briefing a case is not like writing a poem, where the message may be conveyed entirely through allusions and connotations. Poets may use ambiguity, but lawyers use clarity. If a party wants a state court to decide whether she was deprived of a federal constitutional right, she has to say so. It has to be clear from the petition filed at each level in the state court system that the petitioner is claiming the violation of the federal constitution that the petitioner subsequently claims in the federal habeas petition. That is, "the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby *alerting* that court to the federal nature of the claim."[23] If she does not say so, then she does not "fairly present" the federal claim to the state court. It may not take much,[24] and as we held in *Peterson*, the inquiry is not mechanical, but requires examination of what the petitioner said and the context in which she said it. To exhaust a federal constitutional claim in state court, a petitioner has to have, at the least, explicitly alerted the court that she was making a federal constitutional claim. Galvan did not.

**AFFIRMED**.

---

[23]*Baldwin*, 124 S. Ct. at 1349 (emphasis added).

[24]*C.f. Baldwin*, 124 S. Ct. at 1351 ("A litigant wishing to raise a federal issue can easily indicate the federal basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' ").