**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Trayvonne MITCHELL, Defendant—
Appellant.**

No. 08–50036.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 2009.

Filed June 11, 2009.

Lawrence S. Middleton, Esquire, Michael J. Raphael, Esquire, Assistant U.S., Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Vicki Marolt Buchanan, Esquire, Newport Beach, CA, for Defendant–Appellant.

Before: HAWKINS, BERZON and CLIFTON, Circuit Judges.

## MEMORANDUM *

Following a *Booker*[1] remand, Trayvonne Mitchell ("Mitchell") appeals his 283–month sentence for conspiracy, bank robbery and use of a firearm. We affirm.

 The district court did not clearly err by applying the firearm enhancement to the March 1996 robbery. Although the district court's comments about the enhancement at resentencing could be construed as improperly imposing the enhancement solely because a bank robbery had occurred, *see United States v. Zelaya,* 114 F.3d 869, 871–72 (9th Cir.1997), the court also expressly adopted all of its findings from the prior sentencing. There, the court had noted that Mitchell was aware of the use of a firearm during a prior robbery within the conspiracy. The court concluded that, based on Mitchell's past experience, it was reasonably foreseeable a firearm would again be used in the March robbery. Andre Hart's trial testimony makes it clear Mitchell was aware guns were used in the previous robberies, and the March robbery followed a similar pattern. In light of this evidence, the district court did not clearly err by imposing the firearm enhancement. *See United States v. Garcia,* 909 F.2d 1346, 1349–50 (9th Cir.1990); *cf. United States v. Carter,* 560 F.3d 1107, 1113 (9th Cir.2009).

 Nor did the district court clearly err by imposing the leader/organizer enhancement for Mitchell's role in the March robbery. Although Mitchell would have us consider only the testimony of Kenneth Austin with respect to this enhancement, the district court observed the entire trial and heard testimony about Mitchell's role throughout the various robberies involved in the conspiracy, all of which show Mitchell was more than just an "average participant" in the robberies.[2] *See United States v. Pinkney,* 15 F.3d 825, 828 (9th Cir.1994). Andre Hart specifically testified that Mitchell was involved in the planning of two robberies (one charged, one uncharged) which occurred prior to the March robbery. Kenneth Rogers also testified regarding later robberies that Mitchell was involved in selecting who would participate in robberies and directed the actions of co-conspirators. In all the robberies, Mitchell appears to have received a

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

1. *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

2. Although the dissent suggests Mitchell will be unfairly surprised by the consideration of his role throughout the conspiracy, the record reveals this was the government's argument to the judge at sentencing as well as the district court's original basis for imposing the enhancement. Indeed, before the district court, Mitchell's counsel did not attempt to clearly differentiate Mitchell's role in the individual robberies, and even conceded that some role-in-the-offense enhancement was proper; the debate was instead over which level to apply (leader/organizer or manager/supervisor).

significant cut of the proceeds while directing robbery participants from a safe distance, suggesting he was higher up the chain than those recruited to enter the bank. *See* U.S.S.G. § 3B1.1, cmt. 4. When Austin's testimony about the way the March robbery was organized and how it was to be paid out is set against the backdrop of Hart's testimony about Mitchell's role in the previous two robberies, we cannot say the court clearly erred by finding that Mitchell was also a leader/organizer of the March robbery.[3]

Finally, Mitchell's 283–month sentence was reasonable. The district court adequately considered the sentences of his co-conspirators. Although Mitchell received the lengthiest sentence, the other co-defendants were distinguishable because of acceptance of responsibility or criminal history points. The district court adequately considered and weighed the various sentencing factors set forth in 18 U.S.C. § 3553(a), specifically noting the severity of the offense, the need to promote respect for the law and deter crimes, and the need to protect the public. *See United States v. Carty*, 520 F.3d 984, 992 (9th Cir.2008) (en banc). The district court also considered and gave some weight to Mitchell's post-offense rehabilitation. Even if we might have weighed things differently, we cannot reverse a sentence simply because we would have imposed a different one. *Unit-*

*ed States v. Rivera*, 527 F.3d 891, 911 (9th Cir.2008).

**AFFIRMED.**

BERZON, Circuit Judge, dissenting:

Under the Guidelines, a defendant's offense level can be increased four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S. SENTENCING GUIDELINES MANUAL ("USSG") § 3B1.1. The majority concludes that the district court properly applied a leadership enhancement for Mitchell's role in the March robbery based on "testimony about Mitchell's role throughout the various robberies involved in the conspiracy, all of which indicate Mitchell was more than just an 'average participant' in the robberies." For the reasons set forth below, I respectfully disagree.

1. To impose a four-level increase under § 3B1.1, the district court was required to find that Mitchell served as a leader or organizer "[b]ased on [his] role *in the offense.*" USSG § 3B1.1 (emphasis added). The majority hardly mentions Mitchell's role in the March robbery, focusing instead on his alleged role in the broader conspiracy. This sleight of hand obscures the most significant problem with the sentence imposed by the district court: Simply stated, none of the evidence presented by the government demonstrates

---

**3.** We are unpersuaded by the dissent's argument that the district court improperly considered Mitchell's role in the overall conspiracy. The preface to U.S.S.G. § 3B1.1 clearly indicates that a determination of role in the offense is to be made on the basis of all relevant conduct, "and not solely on the basis of elements and acts cited in the count of conviction." The introductory comment was adopted in response to various restrictive circuit court decisions in order to clarify that a sentencing judge could consider "the contours of the underlying scheme itself rather

than the mere elements of the offense charged." *See United States v. Caballero*, 936 F.2d 1292, 1298–99 (D.C.Cir.1991) (discussing caselaw and effect of clarifying amendment) (internal quotations omitted); U.S.S.G. Appendix C, amendment 345. Moreover, in this case, the conspiracy count was grouped with each of the individual robbery counts, so the "offense" to which the leadership enhancement applied was *both* the conspiracy and the individual robbery, making it even more proper for the sentencing judge to consider Mitchell's role in the overall conspiracy.

that Mitchell played a leadership role in the March robbery, rendering any increase under § 3B1.1 unwarranted.

The government offered testimony that (1) Mitchell attended a meeting with his co-conspirators prior to the March robbery, (2) at that meeting Mitchell told the group he had driven by the bank a few days earlier to check it out and that the job "was going to be easy," and (3) Mitchell provided his co-conspirators with police scanners to monitor local police activity from inside the bank. This evidence is plainly insufficient to justify a leadership enhancement under § 3B1.1, as none of the government's evidence demonstrates that Mitchell exercised control or authority over other participants in the robbery. *See United States v. Garcia*, 497 F.3d 964, 970 (9th Cir.2007) ("[Some degree of control or organizational authority over others] is required to impose the four-level enhancement under § 3B1.1(a)."); *United States v. Lopez–Sandoval*, 146 F.3d 712, 717 (9th Cir.1998) (holding that "without a showing that the defendant had control over others, even a defendant with an important role in an offense cannot be deemed a manager" (internal quotations omitted)); *United States v. Avila*, 95 F.3d 887, 889 (9th Cir.1996) ("[T]o sustain a finding that a defendant was an organizer or a leader, there must be evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." (internal quotations omitted)). The district court thus plainly erred in concluding that Mitchell was a leader or an organizer of the March robbery, as there was no evidence that he controlled or exercised any authority over the other participants in that crime.

The panel majority implicitly reaches the same conclusion, as it does not even attempt to justify the leadership enhancement with evidence of Mitchell's specific role in the March robbery. Instead, the majority relies on evidence that Mitchell served as a leader or organizer of *other* bank robberies committed with some of the same people to justify enhancing his sentence for the March robbery.

This reasoning is misguided, for several reasons. First, the rationale embraced by the panel majority to justify the four-level increase to Mitchell's sentence appears for the first time in this appeal in the panel's opinion. In its brief, the government never argues that evidence of Mitchell's role in the other robberies is relevant to determining whether he was a leader or organizer of the March robbery. To the contrary, the government's only argument in support of the enhancement is that the paltry evidence described above—attending a meeting, driving by the bank, and setting up police scanners—is sufficient to demonstrate that Mitchell served as a leader or organizer of the March robbery. Mitchell therefore did not have an opportunity to rebut the argument that evidence of his role in other crimes can be used to increase his sentence for the March robbery. Affirming the district court on that basis is thus exceedingly unfair to Mitchell. *Cf. Galvan v. Alaska Dep't of Corr.*, 397 F.3d 1198, 1204 (9th Cir.2005) ("If [courts] granted relief to petitioners on grounds not urged by petitioners, respondents would be deprived of a fair opportunity to respond, and the courts would be deprived of the benefit of briefing, so generally courts limit themselves to resolving the issues put before them, as opposed to the issues they spot outside what the parties elect to raise.").

Second, the approach advanced by the majority is squarely foreclosed by the applicable Guidelines provisions, which, as noted above, focus on the defendant's role in the specific offense at issue. *See* USSG

§ 3B1.1. Among the factors to be considered are "the exercise of decision making authority, the nature of participation in the commission *of the offense,* the recruitment of accomplices, the claimed right to a larger share of the fruits *of the crime,* the degree of participation in planning or organizing *the offense,* the nature and scope of the illegal activity, and the degree of control and authority exercised over others." USSG § 3B1.1 cmt. n. 4 (emphasis added). None of these factors touch upon the defendant's role in other, separate offenses. To the contrary, the § 3B1.1 analysis is designed to assess the relative responsibility of multiple defendants for the specific offense at issue. *See* USSG § 3B1.1 cmt. background.

This is not to say, of course, that a sentencing court can never consider other conduct of a defendant to determine whether he was an organizer or leader of criminal activity under § 3B1.1. The introductory commentary to Chapter 3, Part B of the Guidelines provides that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), *i.e.,* all conduct included under § 1B1.3(a)(1)–(4), and not solely on the basis of elements and acts cited in the count of conviction." USSG ch. 3, pt. B, introductory cmt.

Under § 1B1.3(a)(1), however, "relevant conduct" is limited to

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in further-ance of the jointly undertaken criminal activity,

*that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.*

USSG § 1B1.3(a)(1) (emphasis added). In this case, none of the other robberies relied upon by the majority occurred "during the commission of," "in preparation for," or "in the course of attempting to avoid detection or responsibility for" the offense of conviction, the March robbery. The other robberies therefore are not "relevant conduct" under the Guidelines.

Without discussing the Guidelines' definition of "relevant conduct," the majority asserts that the introductory comment to § 3B1.1 permits the sentencing judge to consider "the contours of the underlying scheme itself rather than the mere elements of the offense charged." Maj. Op. at 615 n. 3 (quoting *United States v. Caballero,* 936 F.2d 1292, 1298–99 (D.C.Cir. 1991)). That is simply not true. Although a sentencing court may consider "conduct other than that involved in the offense of conviction" when applying an adjustment for a defendant's role in the offense, "it may not consider conduct that does not meet the relevancy requirement of § 1B1.3(a)(1)–(4)." *United States v. Duran,* 15 F.3d 131, 133 (9th Cir.1994). As explained above, the relevancy requirement of § 1B1.3 limits "relevant conduct" to acts or omissions "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1). Thus, while the sentencing judge certainly could have considered evidence of "the contours of the underlying scheme" to commit the March robbery, nothing in the introductory comment or in the Guidelines' definition of "relevant con-

duct" expands this inquiry to permit consideration of the scheme utilized to attempt other robberies. Indeed, we have affirmed leadership enhancements in similar cases only when the related conduct was a "necessary precursor" to the offense of conviction. *See United States v. Scarano*, 975 F.2d 580, 587 (9th Cir.1992).

The rest of the applicable Guidelines provisions bolster this conclusion. Section 1B1.3(a)(2) provides that, "*solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts*," "relevant conduct" includes "all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2) (emphasis added). If robbery were an offense "for which § 3D1.2(d) require[s] grouping of multiple counts," then the panel majority would be justified in considering other crimes "that were part of the same course of conduct or common scheme or plan" as the March robbery to increase Mitchell's offense level. *Cf. Duran*, 15 F.3d at 134. Yet Section 3D1.2(d) specifically excludes robbery from its operation. *See* USSG § 3D1.2(d) ("Specifically excluded from operation of this subsection are ... § § 2B2.1 [burglary], 2B2.3 [trespass], 2B3.1 [robbery] ...."). By its plain terms, § 1B1.3(a)(2) thereby provides that acts and omissions that were part of the same course of conduct or common scheme or plan as the March robbery are *not* "relevant conduct" under the Guidelines, as robbery is not an offense eligible for grouping under § 3D1.2(d).

In short, the approach advocated by the majority—under which any offense committed during the course of the conspiracy could be considered to determine whether Mitchell was a leader or organizer of the March robbery—was intended to apply only "to one class of offenses, primarily certain property, tax, fraud, and drug offenses for which the guidelines depend substantially on quantity." USSG § 1B1.3 cmt. background. For this class of offenses, § 1B1.3(a)(2) "provides for consideration of a broader range of conduct ... than with respect to other offenses such as assault, *robbery,* and burglary." *Id.* (emphasis added). The panel majority extends this approach well beyond its intended bounds, in direct contravention of the Sentencing Commission's instructions. I would therefore vacate Mitchell's 283–month sentence and remand for resentencing.

2. Mitchell also appeals the district court's application of a firearm enhancement under § 2B3.1(b)(2). Here, there was no specific evidence that Mitchell knew that a gun would be used in the March robbery. The majority nonetheless affirms, holding that the district court could infer from Mitchell's awareness of the use of a gun in a prior robbery that it was reasonably foreseeable that a gun would be used in the March robbery. Lost in the majority's analysis, however, is the fact that Mitchell's co-conspirators employed different *modus operandi* to commit the various robberies attempted during the course of the conspiracy, meaning that the use of a gun in a prior robbery would not necessarily lead Mitchell to believe that a gun would be used in the March robbery. As the majority admits, the district court also appeared to assume at one point that use of a gun was reasonably foreseeable based on the very nature of bank robberies—an assumption expressly prohibited under our precedent. *See United States v. Zelaya,* 114 F.3d 869, 871 (9th Cir.1997) ("We conclude that a finding of reasonable foreseeability must be based upon something more than the district court's observations about bank robberies in general."). I would therefore instruct the district court to reexamine application of the firearm enhancement on remand,

paying particular attention to the similarities and differences between the March robbery and the prior robberies committed by Mitchell's co-conspirators.