BERZON, Circuit Judge,
dissenting:
Under the Guidelines, a defendant’s offense level can be increased four levels “[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.” U.S. Sentenoing Guidelines Manual (“USSG”) § 3B1.1. The majority concludes that the district court properly applied a leadership enhancement for Mitchell’s role in the March robbery based on “testimony about Mitchell’s role throughout the various robberies involved in the conspiracy, all of which indicate Mitchell was more than just an ‘average participant’ in the robberies.” For the reasons set forth below, I respectfully disagree.
1. To impose a four-level increase under § 3B1.1, the district court was required to find that Mitchell served as a leader or organizer “[bjased on [his] role in the offense.” USSG § 3B1.1 (emphasis added). The majority hardly mentions Mitchell’s role in the March robbery, focusing instead on his alleged role in the broader conspiracy. This sleight of hand obscures the most significant problem with the sentence imposed by the district court: Simply stated, none of the evidence presented by the government demonstrates *616 that Mitchell played a leadership role in the March robbery, rendering any increase under § 3B1.1 unwarranted.
The government offered testimony that (1) Mitchell attended a meeting with his co-conspirators prior to the March robbery, (2) at that meeting Mitchell told the group he had driven by the bank a few days earlier to check it out and that the job “was going to be easy,” and (3) Mitchell provided his co-conspirators with police scanners to monitor local police activity from inside the bank. This evidence is plainly insufficient to justify a leadership enhancement under § 3B1.1, as none of the government’s evidence demonstrates that Mitchell exercised control or authority over other participants in the robbery. See United States v. Garcia, 497 F.3d 964, 970 (9th Cir.2007) (“[Some degree of control or organizational authority over others] is required to impose the four-level enhancement under § 3Bl.l(a).”); United States v. Lopez-Sandoval, 146 F.3d 712, 717 (9th Cir.1998) (holding that “without a showing that the defendant had control over others, even a defendant with an important role in an offense cannot be deemed a manager” (internal quotations omitted)); United States v. Avila, 95 F.3d 887, 889 (9th Cir.1996) (“[T]o sustain a finding that a defendant was an organizer or a leader, there must be evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime.” (internal quotations omitted)). The district court thus plainly erred in concluding that Mitchell was a leader or an organizer of the March robbery, as there was no evidence that he controlled or exercised any authority over the other participants in that crime.
The panel majority implicitly reaches the same conclusion, as it does not even attempt to justify the leadership enhancement with evidence of Mitchell’s specific role in the March robbery. Instead, the majority relies on evidence that Mitchell served as a leader or organizer of other bank robberies committed with some of the same people to justify enhancing his sentence for the March robbery.
This reasoning is misguided, for several reasons. First, the rationale embraced by the panel majority to justify the four-level increase to Mitchell’s sentence appears for the first time in this appeal in the panel’s opinion. In its brief, the government never argues that evidence of Mitchell’s role in the other robberies is relevant to determining whether he was a leader or organizer of the March robbery. To the contrary, the government’s only argument in support of the enhancement is that the paltry evidence described above — attending a meeting, driving by the bank, and setting up police scanners — is sufficient to demonstrate that Mitchell served as a leader or organizer of the March robbery. Mitchell therefore did not have an opportunity to rebut the argument that evidence of his role in other crimes can be used to increase his sentence for the March robbery. Affirming the district court on that basis is thus exceedingly unfair to Mitchell. Cf. Galvan v. Alaska Dep’t of Corr., 397 F.3d 1198, 1204 (9th Cir.2005) (“If [courts] granted relief to petitioners on grounds not urged by petitioners, respondents would be deprived of a fair opportunity to respond, and the courts would be deprived of the benefit of briefing, so generally courts limit themselves to resolving the issues put before them, as opposed to the issues they spot outside what the parties elect to raise.”).
Second, the approach advanced by the majority is squarely foreclosed by the applicable Guidelines provisions, which, as noted above, focus on the defendant’s role in the specific offense at issue. See USSG *617 § 3B1.1. Among the factors to be considered are “the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.” USSG § 3B1.1 cmt. n. 4 (emphasis added). None of these factors touch upon the defendant’s role in other, separate offenses. To the contrary, the § 3B1.1 analysis is designed to assess the relative responsibility of multiple defendants for the specific offense at issue. See USSG § 3B1.1 cmt. background.
This is not to say, of course, that a sentencing court can never consider other conduct of a defendant to determine whether he was an organizer or leader of criminal activity under § 3B1.1. The introductory commentary to Chapter 3, Part B of the Guidelines provides that “[t]he determination of a defendant’s role in the offense is to be made on the basis of all conduct within the scope of § IB 1.3 (Relevant Conduct), i.e., all conduct included under § lB1.3(a)(l)-(4), and not solely on the basis of elements and acts cited in the count of conviction.” USSG ch. 3, pt. B, introductory cmt.
Under § lB1.3(a)(l), however, “relevant conduct” is limited to
(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

USSG § lB1.3(a)(l) (emphasis added). In this case, none of the other robberies relied upon by the majority occurred “during the commission of,” “in preparation for,” or “in the course of attempting to avoid detection or responsibility for” the offense of conviction, the March robbery. The other robberies therefore are not “relevant conduct” under the Guidelines.
Without discussing the Guidelines’ definition of “relevant conduct,” the majority asserts that the introductory comment to § 3B1.1 permits the sentencing judge to consider “the contours of the underlying scheme itself rather than the mere elements of the offense charged.” Maj. Op. at 615 n. 3 (quoting United States v. Caballero, 936 F.2d 1292, 1298-99 (D.C.Cir.1991)). That is simply not true. Although a sentencing court may consider “conduct other than that involved in the offense of conviction” when applying an adjustment for a defendant’s role in the offense, “it may not consider conduct that does not meet the relevancy requirement of § lB1.3(a)(l)-(4).” United States v. Duran, 15 F.3d 131, 133 (9th Cir.1994). As explained above, the relevancy requirement of § 1B1.3 limits “relevant conduct” to acts or omissions “that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.” USSG § lB1.3(a)(l). Thus, while the sentencing judge certainly could have considered evidence of “the contours of the underlying scheme” to commit the March robbery, nothing in the introductory comment or in the Guidelines’ definition of “relevant con *618 duct” expands this inquiry to permit consideration of the scheme utilized to attempt other robberies. Indeed, we have affirmed leadership enhancements in similar cases only when the related conduct was a “necessary precursor” to the offense of conviction. See United States v. Scarano, 975 F.2d 580, 587 (9th Cir.1992).
The rest of the applicable Guidelines provisions bolster this conclusion. Section lB1.3(a)(2) provides that, “solely with respect to offenses of a character for which § SDl.2(d) would require grouping of multiple counts,” “relevant conduct” includes “all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction.” USSG § lB1.3(a)(2) (emphasis added). If robbery were an offense “for which § 3D1.2(d) require[s] grouping of multiple counts,” then the panel majority would be justified in considering other crimes “that were part of the same course of conduct or common scheme or plan” as the March robbery to increase Mitchell’s offense level. Cf. Duran, 15 F.3d at 134. Yet Section 3D1.2(d) specifically excludes robbery from its operation. See USSG § 3D1.2(d) (“Specifically excluded from operation of this subsection are § § 2B2.1 [burglary], 2B2.3 [trespass], 2B3.1 [robbery] ... ”). By its plain terms, § lB1.3(a)(2) thereby provides that acts and omissions that were part of the same course of conduct or common scheme or plan as the March robbery are not “relevant conduct” under the Guidelines, as robbery is not an offense eligible for grouping under § 3D1.2(d).
In short, the approach advocated by the majority — under which any offense committed during the course of the conspiracy could be considered to determine whether Mitchell was a leader or organizer of the March robbery — was intended to apply only “to one class of offenses, primarily certain property, tax, fraud, and drug offenses for which the guidelines depend substantially on quantity.” USSG § 1B1.3 cmt. background. For this class of offenses, § lB1.3(a)(2) “provides for consideration of a broader range of conduct ... than with respect to other offenses such as assault, robbery, and burglary.” Id. (emphasis added). The panel majority extends this approach well beyond its intended bounds, in direct contravention of the Sentencing Commission’s instructions. I would therefore vacate Mitchell’s 283-month sentence and remand for resentenc-ing.
2. Mitchell also appeals the district court’s application of a firearm enhancement under § 2B3.1(b)(2). Here, there was no specific evidence that Mitchell knew that a gun would be used in the March robbery. The majority nonetheless affirms, holding that the district court could infer from Mitchell’s awareness of the use of a gun in a prior robbery that it was reasonably foreseeable that a gun would be used in the March robbery. Lost in the majority’s analysis, however, is the fact that Mitchell’s co-conspirators employed different modus operandi to commit the various robberies attempted during the course of the conspiracy, meaning that the use of a gun in a prior robbery would not necessarily lead Mitchell to believe that a gun would be used in the March robbery. As the majority admits, the district court also appeared to assume at one point that use of a gun was reasonably foreseeable based on the very nature of bank robberies — an assumption expressly prohibited under our precedent. See United States v. Zelaya, 114 F.3d 869, 871 (9th Cir.1997) (“We conclude that a finding of reasonable foreseeability must be based upon something more than the district court’s observations about bank robberies in general.”). I would therefore instruct the district court to reexamine application of the firearm enhancement on remand, *619 paying particular attention to the similarities and differences between the March robbery and the prior robberies committed by Mitchell’s co-conspirators.