Berzon, Circuit Judge,
dissenting in part:
In my view, the district court clearly erred in finding the possession of firearms at the Gilroy stash house reasonably foreseeable to Diaz-Lozano, and so erred in applying a two-level upward adjustment under Guidelines section 2Dl.l(b)(l).
“[T]he district court’s factual determination of foreseeability ‘must be supported by the particular facts and circumstances of the underlying [offense].’ ” United States v. Sarkisian, 197 F.3d 966, 990 (9th Cir. 1999) (quoting United States v. Zelaya, 114 F.3d 869, 872 (9th Cir. 1997) (modification in original). In this case, unlike in other cases applying an upward adjustment for co-conspirator possession of a dangerous weapon, no specific facts indicate that Diaz-Lozano was or should have been aware of the possession of guns at the Gilroy stash house.
There is no evidence that Diaz-Lozano ever visited the Gilroy stash house.[1] He did not have any contact with the three individuals arrested there. There is also no evidence that Diaz-Lozano knew any other individuals who spent time at the Gilroy house, let alone that he knew any such individuals well enough to know their “methods of operation.” See United States v. Willis, 899 F.2d 873, 875 (9th Cir. 1990) (quoting United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir. 1986)). Moreover, unlike in United States v. Garcia, 909 F.2d 1346, 1350 (9th Cir. 1990), in which the defendant was present with co-conspirators in a vehicle in which a gun was hidden during the relevant drug transaction, there is no evidence that weapons were ever present at any of the drug transactions in which Diaz-Lozano himself took part, or *708 that Diaz-Lozano ■ was ever otherwise in close proximity to weapons during the course of the conspiracy.
That drugs were delivered to Diaz-Loza-no’s house from a location where weapons were present, and that he had some knowledge of the scope of the overall drug conspiracy, is insufficient to support a finding of reasonable foreseeability. The application of the adjustment in this case amounts to an unwarranted “presumption as to the presence of a firearm in illicit narcotics transactions.” See Willis, 899 F.2d at 875.
I therefore dissent as to the gun enhancement only. I concur in the remainder of the memorandum disposition.

, When asked whether, during a July 14, 2010 conversation Diaz-Lozano had "de--scribe[d] ever moving or transferring pounds of methamphetamine from this San Jose location himself to the Sacramento area?” undercover agent Salvador Robles answered "Yes.” Asked to describe what Diaz-Lozano had said, Robles stated: "He told me that they had sent a vehicle to San Jose, and that vehicle had been loaded with ten pounds of meth and brought back to Sacramento in a hidden compartment.” When then asked whether Diaz Lozano had stated “that he was part of this particular distribution, this ten-pound distribution," Robles again answered "Yes.”