Gregory Javier RAMIREZ, Petitioner,

v.

V.M. ALMAGER, Warden, Respondent.

No. CV 08–896–ABC(E).

United States District Court,
C.D. California.

Nov. 18, 2008.

Gregory Javier Ramirez, Susanville, CA, pro se.

Joseph P. Lee, CAAG – Office of Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER ADOPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

AUDREY B. COLLINS, District Judge.

Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge. The Court approves and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein by United States mail on Petitioner and counsel for Respondent.

## JUDGMENT

Pursuant to the Order Adopting Findings, Conclusions and Recommendations of United States Magistrate Judge,

IT IS ADJUDGED that the Petition is denied and dismissed with prejudice.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CHARLES F. EICK, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Audrey B. Collins, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05–07 of the United States District Court for the Central District of California.

## PROCEEDINGS

Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on February 8, 2008, accompanied by an attached Memorandum ("Pet. Mem."). Respondent filed an Answer on August 8, 2008. On August 27, 2008, Petitioner filed a Traverse and "Petitioner's Request to Conduct Discovery."

## BACKGROUND

On December 12, 2003, Petitioner drove Jose Chavez to an intersection where Chavez exited Petitioner's car and fired shots at the driver of another car, Orlando Ortiz, and Ortiz' passenger, Refugio Perez. Ortiz was wounded but survived. Perez returned fire and shot Chavez dead.

A jury found Petitioner guilty of conspiracy to commit murder in violation of

California Penal Code section 182(a)(1) and the willful, deliberate and premeditated attempted murder of Orlando Ortiz in violation of California Penal Code sections 187(a) and 664 (Reporter's Transcript ["R.T."] 3009–10); (Clerk's Transcript ["C.T."] 165–66). The jury found true the allegations that a principal personally and intentionally had discharged a firearm in the commission of the attempted murder of Ortiz within the meaning of California Penal Code section 12022.53(c) and 12022.53(e)(1) (R.T. 3010; C.T. 166), and that a principal personally and intentionally had discharged a firearm causing great bodily injury to Orlando Ortiz within the meaning of California Penal Code sections 12022.53(d) and 12022.53(e)(1) (R.T. 3010; C.T. 166). The jury found Petitioner not guilty of the attempted murder of Refugio Perez (C.T.167). The jury found not true the allegations that the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang within the meaning of California Penal Code section 186.22(b)(1) (R.T. 3010; C.T. 165–66). Petitioner received a sentence of twenty-five years to life (R.T. 3032; C.T. 178–81).

The Court of Appeal affirmed the judgment (Respondent's Lodgment D); see also People v. Ramirez, 2005 WL 2365217 (Cal.Ct.App. Sept.27, 2005). The California Supreme Court denied Petitioner's petition for review summarily (Respondent's Lodgments E, F).

Petitioner filed a habeas corpus petition in the California Supreme Court, which that court denied on December 21, 2005 with citations (Respondent's Lodgments G, H). Petitioner then filed a habeas corpus petition in this Court, Ramirez v. Evans, CV 07–576–ABC (E), which the Court denied and dismissed without prejudice for failure to exhaust available state remedies. Petitioner filed another habeas corpus petition in the California Supreme Court on July 11, 2007, which that court denied on January 16, 2008 with citations (Respondent's Lodgments I, J).

## SUMMARY OF TRIAL EVIDENCE

The following factual summary is taken from the opinion of the California Court of Appeal in People v. Ramirez, 2005 WL 2365217 (Cal.Ct.App. Sept.27, 2005). See Galvan v. Alaska Dep't of Corrections, 397 F.3d 1198, 1199 & n. 1 (9th Cir.2005) (taking factual summary from state appellate decision).

1. Prosecution Evidence

A. Background

Orlando [Ortiz] was the prosecution's chief witness. He had been appellant's friend for years, and did not want to testify against him. He lived with his mother, girlfriend and four-year-old son in the neighborhood of the Watts Varrio Grape street gang. He testified that his friends and older brothers were in the gang, but he did not belong to it himself. His brother "Crow" had been killed. His brothers "Lefty" and "Canejo" (sometimes called "Cujo") were incarcerated. Orlando, Canejo, and appellant used to "hang out" at a house on Holmes Avenue. Three of Orlando's friends who used to join them there, "Spanky," "Sneaky," and Eloy Sanchez (Eloy), were killed shortly before Orlando was shot.

Chavez, who was sometimes called "Payaso," also belonged to the gang, but was not Orlando's friend. He hung out and sold drugs at another location, Grape Street. Appellant, who was sometimes called "Bandit," frequented the Grape Street location as well as the Holmes Street location. Orlando testified that he did not know if appellant belonged to the gang. However, appel-

lant admitted to the police that he was a member of the Watts Varrio Grape street gang, and the prosecution's gang expert testified that both Orlando and appellant belonged to the gang.

Before and after Chavez shot Orlando, Orlando made statements to the police which incriminated both Chavez and appellant. At the trial, Orlando testified that Chavez was guilty, appellant was innocent, the police were lying or confused, and he did not recall what he told them about appellant. He also said he did not want to testify because it was Chavez who shot him, and Chavez was dead. He denied that he feared being labeled a "snitch." He attributed his memory problems to stress medication, surgery, and his injuries.

In addition to Orlando's statements to the police and testimony at trial, the prosecution's case included a confession from appellant and other evidence.

## B. Events Prior to the Shooting of Orlando

Sometime in May 2003, Chavez came to Orlando's house, looking for Orlando's brother Canejo. Chavez had a handgun under his shirt. He told Orlando he had just used the gun to shoot two men in a drive-by shooting. He asked Orlando to hide the gun. Orlando refused. Chavez left. They stopped speaking.

In October 2003, appellant told Orlando that Chavez had asked him to pick up Orlando and drive Orlando to a place where Chavez would kill him. Orlando went to Chavez and asked him if he wanted to kill him. Chavez denied it. Appellant later told Orlando that he should not have confronted Chavez, as Chavez would know that appellant warned Orlando about Chavez's intention.

Fearing for his life, Orlando told Detective Pantoja in October 2003 about Chavez's participation in the drive-by shooting and request that he hide the gun. Orlando stopped talking to appellant, and briefly lived somewhere else.

On December 11, 2003, while Orlando was at home with his mother and son, a man came into his yard and cocked a large weapon. Orlando closed the door and dialed 911. He also called his best friend, Eloy, to tell him what had happened.

Orlando also testified that at some other point, while he was in appellant's car, he asked appellant for the identity of the person who came to his house with a gun. Appellant became agitated, and Orlando left the car. At the trial, he said the conversation in the car occurred, but the police were confused about when it occurred.

On December 12, 2003, Orlando was at the Holmes Street house with Eloy, Refugio (also called "Mono"), Chavez, and another man, "Boxer." They were gathered there because it was "the day of Sneaky's wake." Appellant was not present. Chavez pulled out a gun, shot at Orlando, and missed. Other people began shooting. As Orlando ran away, Eloy tried to take the gun from Chavez. Chavez killed him.

About an hour later, Orlando received two telephone calls at his home. The first caller was appellant, asking what happened on Holmes Street. The second caller said to Orlando, "You're next." Orlando understood that the caller meant he would be the next person killed, as he was the only one of his friends who was still alive.

At the trial, Orlando testified that he was not sure if the second call came from appellant or from somebody else, such as Chavez. Fearing for his life, he

went to the police station and talked to detectives, later on the night of December 12. In a secretly taped interview, he told them that it was appellant who made the "You're next" telephone call, after Eloy was killed.[1] He gave the police many other details about his problems with Chavez and appellant. He said appellant had told him he was the driver of the car when Chavez committed the drive-by shooting. Chavez was angry because Orlando refused to hide the gun, and appellant was upset that Orlando talked to Chavez about Chavez's wanting to kill him. A person who looked exactly like appellant had come to his door on December 11 and cocked an "AK 47."[2] When he asked appellant inside appellant's car who the person was who came to his house with a gun, appellant tossed a gun into a secret compartment in the car.

Orlando did not tell the police at that time that he was with Eloy when Eloy was shot. Instead, he said he heard shots, went to Eloy's house, and discovered that Eloy had been killed.

Orlando's interview at the police station continued into the early morning hours on December 13, 2003. He went home, slept, and then went to a friend's funeral. At the funeral, Boxer asked him to come to his house to discuss something important. Orlando drove to Boxer's house, taking Refugio in the passenger seat of his car. When he arrived there, he was surprised to see Chavez talking to Boxer in the yard, near a gray car. Chavez ran towards the passenger's side of the car. Realizing "it was a setup," Orlando drove off.

Orlando testified that he did not see appellant at Boxer's house or driving the

gray car. He also testified that he did not see appellant driving the car, and nobody chased him. However, as will be seen, *post*, he implicated appellant when detectives interviewed him at the hospital after the shooting.

According to Orlando, 10 or 15 minutes after he drove away from Boxer's house, he was stopped for a light at the intersection of Grandee Avenue and Century Boulevard. Suddenly, he saw Chavez's face in his side view mirror. Chavez grabbed Orlando's shirt and tried to put the gun to his head. Orlando struggled to push the gun away. Chavez shot him 10 times, mainly on the left side of his body. The shots entered Orlando's neck, shoulders, back, chest, collarbone, arm, and armpit. Refugio shot Chavez in the abdomen, killing him. Orlando drove towards Martin Luther King Hospital, determined not to die, for the sake of his son. Refugio told Orlando he had received a shot in the leg. Refugio left the car at an intersection, before Orlando reached the emergency room.

Orlando survived with severe permanent injuries, including nerve damage, an inability to shut one eye, and an inability to open his mouth widely. The police found a loaded revolver and two spent shell casings in Orlando's car, which he left outside of the emergency room. It was stipulated at the trial that Refugio shot Chavez. Orlando testified that he did not see Refugio commit the shooting.

An eyewitness named Cornell M. happened to be at the intersection on his bicycle. He saw a man (Chavez) walk up to the driver's side of the car, fire a

---

1. The police secretly recorded the interview. A redacted audiotape of it was played for the jury.

2. At the trial, Orlando testified that it was too dark for him to identify the man with the gun.

gun multiple times, and collapse in the middle of the street. Cornell kicked the handgun out of Chavez's reach. The police recovered it.

Two days later, on December 15, 2003, Detectives Hahn and Allen interviewed Orlando at the hospital. He was attached to medical equipment, heavily medicated, and could not speak, as his jaw was wired. The detectives testified that he was alert, oriented, and able to make eye contact with them. Allen told Orlando that an eyewitness reported that Chavez was shot in self-defense. Allen handed Orlando a pad of paper and asked him to write down who shot him and who was with that person.

Orlando wrote down that Chavez shot him, appellant was with Chavez, and Refugio shot Chavez. He also wrote that appellant and Chavez were in a car when he drove to Boxer's house with Refugio. He saw appellant twice after that, while "[t]hey were driving looking for me." The paper indicated that the writing occurred at the hospital at 11:30 a.m. on December 15, 2003.

At the trial, Orlando testified that did not recall writing the paper, and the writing on it did not look like his handwriting. However, when he had met with the prosecutor and the detectives before the trial, he identified his handwriting.

On December 19, 2003, the police arrested appellant outside of Chavez's wake. Appellant told them that after Chavez called him, he drove Chavez to Boxer's house. He stayed in the driver's seat of the car while Chavez and Boxer talked outside of the car. Orlando drove up. Somebody said, "I got you b_____." Orlando drove away. Chavez jumped into the passenger seat of appellant's car. Appellant backed out of Boxer's driveway and drove along a route

which he described to the police. He saw Orlando in the area of 103rd Street and Compton Avenue, and "basically matched eyes" with him. He saw Orlando again on Grandee Avenue, two cars in front of him. Chavez got out of the car, ran up to Orlando's car, and started shooting. Appellant drove past Orlando's car, noting that there was a person inside of it with a gun. After traveling a few blocks, appellant returned to pick up Chavez. He saw him lying on the ground, and drove away.

Appellant denied that there was a secret compartment in his car. The car was impounded when he was arrested. The officers did not find the compartment when they searched the car.

On December 26, 2003, Orlando told the police that he lied when he told them on December 12 that he was at home when Eloy was shot, as he actually was with Eloy at that time. He provided more information about the secret compartment in appellant's car. The police located it, and found a loaded handgun inside. At the trial, Orlando did not recall telling the police about the secret compartment.

## C. Gang Testimony

Scott Stevens, a police expert on gangs, testified that the Watts Varrio Grape street gang is the largest Hispanic gang in Watts. Its primary activities are violent crime and selling narcotics. It was a common feature of gang shootings that a driver would drop off the shooter and pick him up after the crime.

According to Stevens, appellant and Chavez belonged to a subgroup or "crew" of the gang which frequented the area of 97th Street and Grape Street. Orlando, Refugio, Eloy, Sneaky, Spanky, and Orlando's brothers belonged to a different crew, centered at 95th Street

and Holmes Street. The leadership of that crew had been passed down among Orlando's brothers. There was internal strife between the two crews due to competition for marijuana sales, which was a primary source of income. The result was the killing of the members of the Holmes Street crew, from the top leaders down through the ranks. Thus, Chavez shot Orlando to promote the interest of his gang.

Stevens further testified that cooperation with the police was contrary to the usual code of conduct of gang members. Also, gang members do not want to have a "snitch jacket," which can result in harm to themselves or family members. To avoid such a label, a person might say one thing to the police and say something else later.

2. Defense Testimony

Eilene R., appellant's cousin, testified that she helped set up a three-way call with Orlando when appellant called from jail on December 25, 2003. Eilene heard Orlando say that Chavez tried to kill Orlando, but Orlando "got rid of him first."

Another eyewitness, Ivette V., heard shots, saw a man running, and saw a person get out of the passenger's side of the car and shoot at the runner. The runner fell to the ground, the person got back into the car, and the car drove away.

Ivette's brother-in-law, Ruben E., heard shots, and then saw a man at the car with his hands up. The man moved around the front of the car towards the passenger's side. A hand came out from the passenger side window, holding a handgun. The gun fired one time. The man ran from the car. The passenger got out of the car and continued to shoot. The man who was running fell to the ground.

Another eyewitness, Markecia H., heard gunshots, saw a man run and shoot at the same time, and then saw that man fall to the ground.

(Respondent's Lodgment D, pp. 3–9); *People v. Ramirez*, 2005 WL 2365217, at *1–5 (footnotes renumbered).

## PETITIONER'S CONTENTIONS

Petitioner contends:

1. The evidence allegedly was insufficient to support Petitioner's conviction for conspiracy to commit murder (Petition, Ground One);

2. The evidence allegedly was insufficient to support Petitioner's conviction for attempted murder (Petition, Ground Two);

3. The trial court allegedly erred in failing to bifurcate the trial in connection with the testimony of the gang expert (Petition, Ground Three);

4. The use of CALJIC 3.01, California's standard aiding and abetting instruction at the time of Petitioner's trial, allegedly violated due process (Petition, Ground Four):

5. The admission of evidence of the secret compartment in Petitioner's car and the gun found therein allegedly denied Petitioner a fair trial (Petition, Ground Five);

6. Petitioner's trial counsel and appellate counsel allegedly rendered ineffective assistance in the following ways:

 a. trial counsel allegedly failed to investigate, and object to the introduction of, evidence of the secret compartment and gun in Petitioner's car;

 b. trial counsel allegedly failed to explore more fully the circumstances surrounding Ortiz' hospital interview with police and Ortiz' written response to the interviewers' questions;

c. trial counsel assertedly failed to object to alleged prosecutorial misconduct in closing argument; and

d. appellate counsel allegedly failed to investigate the case adequately, to object to allegedly inadmissible evidence, and to challenge on appeal alleged prosecutorial misconduct

(Petition, Ground Six); and

7. The prosecution assertedly committed misconduct by:

a. allegedly placing into evidence an assertedly false document or documents;

b. allegedly presenting Officer Allen's assertedly perjured testimony concerning Petitioner's statement to police;

c. allegedly referring to Petitioner's statement to police as a "confession" in closing argument; and

d. allegedly suppressing ballistics evidence concerning the gun found in the secret compartment of Petitioner's car;

(Petition, Ground Seven).

## STANDARD OF REVIEW

A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (as amended); *see also Woodford v. Visciotti,* 537 U.S. 19, 24–26, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002); *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *Williams v.*

*Taylor,* 529 U.S. 362, 405–09, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

"Clearly established Federal law" refers to the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. *Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). A state court's decision is "contrary to" clearly established Federal law if: (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts ... materially indistinguishable" from a decision of the Supreme Court but reaches a different result. *See Early v. Packer,* 537 U.S. at 8, 123 S.Ct. 362 (citation omitted); *Williams v. Taylor,* 529 U.S. at 405–06, 120 S.Ct. 1495.

Under the "unreasonable application prong" of section 2254(d)(1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade,* 538 U.S. at 76, 123 S.Ct. 1166 (citation omitted); *see also Woodford v. Visciotti,* 537 U.S. at 24–26, 123 S.Ct. 357 (state court decision "involves an unreasonable application" of clearly established federal law if it identifies the correct governing Supreme Court law but unreasonably applies the law to the facts).

A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor,* 529 U.S. at 407, 120 S.Ct. 1495 (citation omitted).

"In order for a federal court to find a state court's application of [Supreme

Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citation omitted). "The state court's application must have been 'objectively unreasonable.'" *Id.* at 520–21, 123 S.Ct. 2527 (citation omitted); *see also Davis v. Woodford,* 384 F.3d 628, 637–38 (9th Cir.2004).

■■■ In applying these standards, this Court looks to the last reasoned state court decision. *See Delgadillo v. Woodford,* 527 F.3d 919, 925 (9th Cir.2008). If the state courts did not decide a federal constitutional claim on the merits, this Court must consider that claim under a *de novo* standard of review. *See Pinholster v. Ayers,* 525 F.3d 742, 756 (9th Cir.2008) ("De novo review applies if the state court did not reach the merits of a particular issue.") (citation omitted).

## DISCUSSION

For the reasons discussed below, the Petition should be denied and dismissed with prejudice.[3]

**I.** *Petitioner's Challenge to the Sufficiency of the Evidence to Support His Conviction for Conspiracy to Commit Murder Does Not Merit Habeas Relief.*

Petitioner contends the evidence does not support Petitioner's conviction for conspiracy to commit murder. Petitioner argues that Ortiz' statements to police and the gang expert's allegedly prejudicial testimony constituted the only evidence supporting the conspiracy conviction (Pet. Mem., p. 11). Petitioner contends Ortiz' trial testimony was inconsistent with his previous statements to police, and attacks Ortiz' pretrial statements as self-serving and inconsistent (Pet. Mem., p. 11; Reply, pp. 3–5).

Petitioner raised his challenge to the sufficiency of the evidence to support his conspiracy conviction in a motion for a new trial following the verdict (R.T. 3018–25). Petitioner's counsel argued that, because Ortiz assertedly had lied at trial, and because there allegedly was no evidence corroborating Ortiz' statements inculpating Petitioner, there was no evidence of an agreement or of intent to kill (R.T. 3021–22). The court denied the motion (R.T. 3030–31). The Court of Appeal agreed that the evidence was sufficient to support Petitioner's conspiracy conviction, ruling that the statements Petitioner and Ortiz made to police "overwhelmingly establish[ed]" that Petitioner and Chavez had an agreement to kill Orlando (Respondent's Lodgment D, pp. 9–11; *People v. Ramirez,* 2005 WL 2365217, at * 6).

■■■ On habeas corpus, the Court's inquiry into the sufficiency of evidence is limited. Evidence is sufficient unless the charge was "so totally devoid of evidentiary support as to render [Petitioner's] conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment." *Fish v. Cardwell,* 523 F.2d 976, 978 (9th Cir.1975), *cert. denied,* 423 U.S.

---

**3.** The Court has read, considered and rejected on the merits all of Petitioner's contentions. The Court discusses Petitioner's principal contentions herein.

The Court assumes, *arguendo,* Petitioner has not procedurally defaulted any of his claims. *See Lambrix v. Singletary,* 520 U.S. 518, 523–25, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997); *Franklin v. Johnson,* 290 F.3d 1223,

1229, 1232–33 (9th Cir.2002); *see also Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir.), *cert. denied,* 528 U.S. 846, 120 S.Ct. 120, 145 L.Ed.2d 102 (1999) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against the petitioner while the procedural bar issues are complicated").

1062, 96 S.Ct. 801, 46 L.Ed.2d 654 (1976) (citations and quotations omitted). The evidence is to be considered "in the light most favorable to the prosecution." *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (plurality opinion) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). A conviction cannot be disturbed unless the Court determines that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wright v. West*, 505 U.S. at 284, 112 S.Ct. 2482; *Jackson v. Virginia*, 443 U.S. at 317, 99 S.Ct. 2781.

 A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson v. Virginia*, 443 U.S. at 326, 99 S.Ct. 2781. "The reviewing court must respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir.1996); *see also Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir.1997). "[T]he prosecution need not affirmatively rule out every hypothesis except that of guilt." *Wright v. West*, 505 U.S. at 296, 112 S.Ct. 2482. This Court cannot grant habeas relief on Petitioner's challenge to the sufficiency of the evidence unless the state court's decision constituted an "unreasonable application of" *Jackson v. Virginia*. *See Juan H. v. Allen*, 408 F.3d 1262, 1274–75 (9th Cir.2005), *cert. denied*, 546 U.S. 1137, 126 S.Ct. 1142, 1145, 163 L.Ed.2d 1000 (2006).

 "A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy." *People v. Morante*, 20 Cal.4th 403, 416, 84 Cal. Rptr.2d 665, 975 P.2d 1071 (1999) (citations omitted). "The elements of a conspiracy may be proven with circumstantial evidence, 'particularly when those circumstances are the defendant's carrying out the agreed-upon crime'" *People v. Vu*, 143 Cal.App.4th 1009, 1024–25, 49 Cal.Rptr.3d 765 (2006) (citations omitted). "To prove an agreement, it is not necessary to establish that the parties met and expressly agreed; rather, 'a criminal conspiracy may be shown by direct or circumstantial evidence that the parties positively or tacitly came to a mutual understanding to accomplish the act and unlawful design.'" *Id.* at 1025, 49 Cal.Rptr.3d 765 (citation omitted).

 "A conviction of conspiracy to commit murder requires a finding of intent to kill." *Id.* (citation omitted). "Because there rarely is direct evidence of a defendant's intent, '[s]uch intent must usually be derived from all the circumstances, including the defendant's actions." *Id.* (citation omitted).

 Although Petitioner challenges the credibility of Ortiz' statements to police inculpating Petitioner, in reviewing the sufficiency of the evidence, this Court cannot reweigh the evidence or redetermine issues of credibility resolved by the jury. *See Bruce v. Terhune*, 376 F.3d 950, 958 (9th Cir.2004) (evidence sufficient to show petitioner molested his 10–year–old cousin; federal habeas court could not revisit jury's resolution of inconsistencies between victim's account and those of other witnesses, and victim's account was not "whol-

ly incredible"); *United States v. Franklin,* 321 F.3d 1231, 1239–40 (9th Cir.), *cert. denied,* 540 U.S. 858, 124 S.Ct. 161, 157 L.Ed.2d 106 (2003) (evidence sufficient to support defendant's convictions for using, carrying or possessing certain type of firearm, where driver of getaway car testified defendant fired shots from car at pursuing officers; although defendant attacked driver's credibility at trial in an effort to show driver was the shooter, the jury believed the driver, and court does not "question a jury's assessment of witnesses' credibility" but rather presumes that the jury resolved conflicting inferences in favor of the prosecution); *Jones v. Wood,* 207 F.3d 557, 563 (9th Cir.2000) (although evidence was "almost entirely circumstantial and relatively weak," questions of credibility were for the jury, and prosecution evidence, if believed, sufficed to support conviction).

Here, the prosecution presented evidence from Ortiz that: (1) Chavez told Ortiz that Chavez and Petitioner had engaged in a prior drive-by shooting in which Petitioner was the driver and Chavez was the shooter; (2) Petitioner told Ortiz that Chavez wanted to kill Ortiz and wanted Petitioner to set it up; (3) the day after Ortiz confronted Chavez concerning Chavez' alleged desire to kill Ortiz, Petitioner asked Ortiz why Ortiz had confronted Chavez, and said Chavez would know Petitioner had reported to Ortiz that Chavez wanted to kill Ortiz because "nobody else knew"; (4) on December 11, 2003, a person who looked "just like" Petitioner came into Ortiz' yard holding an AK–47, cocked the gun, then left; (5) less than half an hour after Eloy's murder, Petitioner called Ortiz and said "you're next"; and (6) at the hospital, Ortiz wrote a statement indicating that Petitioner was with Chavez when Chavez shot Ortiz (R.T. 367–70, 375–79, 385, 397–98, 404–05, 702, 980–82, 990–92, 1252–53, 1539, 1577–82, 1580).

The evidence also included Petitioner's statements to police that: (1) on December 12, 2003, Chavez called Petitioner with the news that Chavez had killed Eloy, after which Petitioner called Ortiz and Ortiz hung up the phone; (2) on December 13, 2003, Petitioner: (a) picked up Chavez and drove to Boxer's house; (b) stayed in the car while Chavez spoke with Boxer; (c) saw Ortiz drive by; (d) left with Chavez, driving in the same direction as Ortiz; (e) saw Ortiz' car and "matched eyes" with Ortiz; (f) pulled up two cars behind Ortiz but did not want to get close; (g) saw Chavez exit the car and shoot at Ortiz; (h) "pushed the gas" and drove past the scene, then returned to where Chavez was lying; and (i) saw the police and left the scene (R.T. 1257–72, 1277, 1508–10, 1524–29, 1537–40, 1555–57, 1887). The evidence also included testimony that Shantel Rasmussen told police that Petitioner and Chavez left Boxer's house immediately after Ortiz, and followed Ortiz (R.T. 1223–24).

 This evidence amply supported Petitioner's conviction for conspiracy to commit murder. *See, e.g., Flores v. Roe,* 228 Fed.Appx. 690, 691 (9th Cir.2007) (where co-defendant notified someone that "he" was coming over "to take care of business," that petitioner arrived almost immediately thereafter and physically attacked the victim, and that petitioner did not react to the shooting and departed with the shooter, evidence was sufficient to support conspiracy conviction). In light of this Court's review of the entire record,[4] the Court cannot deem the Court of Appeal's rejection of Petitioner's first sufficiency claim to be objectively unreason-

---

**4.** The Court must conduct an independent review of the record when a habeas petitioner challenges the sufficiency of the evidence. *See Jones v. Wood,* 114 F.3d at 1008.

able. *See* 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to habeas relief on Ground One of the Petition.

## II. *Petitioner's Challenge to the Sufficiency of the Evidence to Support His Conviction for Attempted Murder Does Not Merit Habeas Relief.*

▇▇▇▇ Under California law, murder is the unlawful killing of a human being with malice aforethought. Cal.Penal Code § 187(a); *see People v. Chinchilla*, 52 Cal. App.4th 683, 690, 60 Cal.Rptr.2d 761 (1997). "In order to prove an attempted murder charge, there must be sufficient evidence of the intent to commit the murder plus a direct but ineffectual act toward its commission." *People v. Chinchilla*, 52 Cal.App.4th at 690, 60 Cal.Rptr.2d 761 (citation omitted). "[A]n aider and abettor is a person who, acting with (1) knowledge of the unlawful purpose of the perpetrator, and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." *People v. Prettyman*, 14 Cal.4th 248, 259, 58 Cal. Rptr.2d 827, 926 P.2d 1013 (1996) (citation and internal quotations omitted); *see also People v. Beeman*, 35 Cal.3d 547, 550–51, 199 Cal.Rptr. 60, 674 P.2d 1318 (1984). "When the offense charged is a specific intent crime, the accomplice must 'share the specific intent of the perpetrator'; this occurs when the accomplice 'knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime.' " *People v. Prettyman*, 14 Cal.4th at 259, 58 Cal.Rptr.2d 827, 926 P.2d 1013 (citation omitted).

▇▇▇▇ Petitioner challenges the sufficiency of the evidence to support his conviction for attempted murder on a theory of aid-ing and abetting, arguing that the evidence did not show that Petitioner shared the intent of Chavez (Pet.Mem., pp. 17–23). According to Petitioner, no direct evidence showed Petitioner facilitated or encouraged Chavez' shooting of Ortiz, or acted with knowledge of Chavez' unlawful purpose (Pet.Mem., pp. 19–20). The Court of Appeal deemed the evidence sufficient (Respondent's Lodgment D, p. 11; *People v. Ramirez*, 2005 WL 2365217, at *6).

From the evidence discussed in Section I above, a rational juror could have found that Petitioner: (1) knew Chavez intended to kill Ortiz; (2) intended to encourage or facilitate the killing of Ortiz; and (3) aided and encouraged Chavez in his attempt to kill Ortiz. Specifically, the following evidence could have convinced a rational juror that Petitioner knew of Chavez' murderous intent: Petitioner told Ortiz that Chavez wanted to kill Ortiz and wanted Petitioner to set it up; and Petitioner complained to Ortiz that Ortiz had told Chavez what Petitioner had said. The following evidence could have convinced a rational juror that Petitioner intended to encourage and facilitate the killing of Ortiz and in fact aided and facilitated Chavez in his attempt to kill Ortiz: (1) Petitioner appeared at Ortiz' house and cocked an AK–47; (2) Petitioner called Ortiz shortly after Eloy's killing and told Ortiz "you're next"; (3) Petitioner drove a car in which Chavez rode as passenger, following Ortiz until Petitioner's car was two cars behind Ortiz' car; (4) Petitioner observed Chavez exit the car and shoot Ortiz; and (5) Petitioner returned to the site of the shooting.

In light of this Court's review of the entire record, the Court cannot deem the Court of Appeal's rejection of Petitioner's second sufficiency claim to be objectively unreasonable. *See* 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to habeas relief on Ground Two of the Petition.

### III. The Trial Court's Failure to Bifurcate Trial in Connection with the Gang Expert's Testimony Does Not Merit Habeas Relief.

#### A. Background

At trial, the defense objected to the introduction of any testimony from the prosecution gang expert that connected Petitioner to any of the killings prior to the shooting of Ortiz (R.T. 1844–45, 1855). In a hearing out of the presence of the jury, the expert, Officer Scott Stevens, testified concerning the "power struggle" within the gang, opining that the crimes were committed for money and power within the gang (R.T. 1845–50). The prosecutor argued that the gang expert's testimony was relevant not only to the criminal street gang allegation, but also, *inter alia:* (1) to show motive, intent, premeditation and deliberation; (2) to explain witness intimidation; (3) to "establish an aider and abettor conspiracy for the underlying crimes"; and (4) to explain that a driver in a gang shooting would not be a "passive companion without knowledge" (R.T. 1850). The judge decided to wait to hear the expert's testimony and any specific objection made during that testimony (R.T. 1856). Petitioner's counsel asked the judge to limit the purpose of the expert's testimony to proof of the criminal street gang allegation (R.T. 1856–57). The judge did not give any such limiting instruction.

Officer Stevens testified at trial as described in the Court of Appeal's opinion, set forth above. During Stevens' testimony, the court advised the jury that some of the background information upon which Stevens based his opinions had not been introduced into evidence, and that the jury could consider such background information "only for the purpose of determining what it was [Stevens] based his opinion on" (R.T.1914). The court continued: "If you are convinced that that information is erroneous and you don't believe it, then, of course, it's up to you to decide what affect [sic] that belief will have on the opinion that he actually gives" (R.T.1914).

Petitioner contends the trial court erred by failing to bifurcate the trial in connection with Stevens' testimony (Pet.Mem., p. 23). Petitioner contends Stevens' testimony included "highly inflammatory other acts of other Persons/Propensity/gang culture and practices" which allegedly had nothing to do with Petitioner's guilt of the charged crimes (*id.*). The Court of Appeal stated that, because the defense made no request for bifurcation, the court would not consider Petitioner's argument (Respondent's Lodgment D, p. 12; *People v. Ramirez,* 2005 WL 2365217, at *7). However, the Court of Appeal also deemed the testimony concerning problems between the two "crews" relevant to the issue of motive, and ruled that the challenged evidence was not prejudicial (Respondent's Lodgment D, p. 12; *People v. Ramirez,* 2005 WL 2365217, at *7).

In California, a trial court has discretion to bifurcate trial of a criminal street gang enhancement allegation. *People v. Hernandez,* 33 Cal.4th 1040, 1049–51, 16 Cal.Rptr.3d 880, 94 P.3d 1080 (2004). However, bifurcation is unnecessary where the evidence supporting the gang enhancement allegation is admissible at a trial on the issue of guilt. *Id.* at 1049–50, 16 Cal. Rptr.3d 880, 94 P.3d 1080. Moreover, even if some of the evidence offered to prove the enhancement allegation is inadmissible at the trial on the charged offense, a court may deny bifurcation where additional factors favor a unitary trial. *Id.* at 1050, 16 Cal.Rptr.3d 880, 94 P.3d 1080. The defendant bears the burden "to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." *Id.* at 1050–51, 16

Cal.Rptr.3d 880, 94 P.3d 1080 (citation omitted).

■■■ To the extent Petitioner argues the trial court violated state law in failing to bifurcate the trial in connection with the gang expert's testimony, Petitioner's claim fails. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Habeas relief is not available for an alleged error in the interpretation or application of state law. *Id.* at 67–68, 112 S.Ct. 475; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir.1991).

■■■ To the extent Petitioner argues the gang expert's testimony inflamed the jury by suggesting Petitioner's propensity to commit crimes, Petitioner's claim fails. The United States Supreme Court has never held that the introduction of prior bad acts evidence to show propensity to commit the current crime violates due process. *See Estelle v. McGuire*, 502 U.S. at 75 n. 5, 112 S.Ct. 475 ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"); *see also Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir.2008) (rejecting habeas petitioner's challenge to introduction of propensity evidence, where petitioner could point to no Supreme Court precedent establishing that admission of otherwise relevant propensity evidence violated the Constitution); *Alberni v. McDaniel*, 458 F.3d 860, 864 (9th Cir.2006), *cert. denied*, 549 U.S. 1287, 127 S.Ct. 1834, 167 L.Ed.2d 333 (2007) (rejecting challenge to admission of propensity evidence in light of Supreme Court's express refusal to consider the issue in *Estelle v. McGuire* ).

Petitioner analogizes the failure to bifurcate the trial in connection with the gang expert's testimony to a failure to sever the trial of the gang enhancement allegation from trial on the charged crimes. In *People v. Hernandez, supra*, the California Supreme Court noted that the "analogy between bifurcation and severance is not perfect," observing that severance is a "more inefficient use of judicial resources than bifurcation because severance requires selection of separate juries, and the severed charges would always have to be tried separately," whereas "a bifurcated trial is held before the same jury, and the gang enhancement would have to be tried only if the jury found the defendant guilty." *People v. Hernandez*, 94 P.3d at 1088. The court concluded that a court's discretion to deny bifurcation of a gang enhancement allegation is "broader than its discretion to admit gang evidence when the gang enhancement is not charged." *Id.* at 1087, 16 Cal.Rptr.3d 880, 94 P.3d 1080.

■■■ "Improper joinder does not, in itself, violate the Constitution." *United States v. Lane*, 474 U.S. 438, 446 n. 8, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Misjoinder violates the Constitution only where it results in prejudice so great as to deny a defendant his right to a fair trial. *Id.; see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.2004), *cert. dismissed*, 545 U.S. 1165, 126 S.Ct. 410, 162 L.Ed.2d 933 (2005) (habeas relief unavailable unless joinder "actually render[ed] petitioner's state trial fundamentally unfair"); *Sandoval v. Calderon*, 241 F.3d 765, 771–72 (9th Cir.2000), *cert. denied*, 534 U.S. 847, 122 S.Ct. 112, 151 L.Ed.2d 69 (2001) *and* 534 U.S. 943, 122 S.Ct. 322, 151 L.Ed.2d 241 (2001) (same). "This prejudice is shown if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." *Sandoval v.*

*Calderon,* 241 F.3d at 772 (citation omitted).

Undue prejudice sometimes can arise when "joinder of counts allows evidence of other crimes to be introduced in a trial where the evidence would otherwise be inadmissible," or when a "strong evidentiary case" is joined with a "weaker one." *Id.* at 771–72. Petitioner "bears the burden to prove unfairness rising to the level of a due process concern." *Park v. State of California,* 202 F.3d 1146, 1149 (9th Cir.), *cert. denied,* 531 U.S. 918, 121 S.Ct. 277, 148 L.Ed.2d 202 (2000) (citation omitted).

Here, the evidence showed Petitioner, Chavez, Ortiz and certain others were gang members. "[E]vidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to the charged crime." *People v. Hernandez,* 33 Cal.4th at 1049, 16 Cal.Rptr.3d 880, 94 P.3d 1080. Much of Officer Stevens' testimony was relevant to issues concerning Petitioner's guilt of the charged offenses. For example, testimony that a power struggle existed between two factions of the gang, and that several gang members had been killed prior to the shooting of Ortiz, placed Petitioner's statement "you're next" in context, and was relevant to the issues of motive, intent, conspiracy, and Petitioner's liability as an aider and abettor. *See People v. Hernandez,* 94 P.3d at 1087 (evidence concerning alliance between two gangs relevant to issues of motive and intent); *Windham v. Merkle,* 163 F.3d 1092, 1103–04 (9th Cir.1998) (in prosecution for murder, attempted murder and assault on an aiding and abetting theory, testimony of gang expert regarding retributive behavior between rival gangs relevant to demonstrate defendant's motive for participating in the alleged crimes). Testimony that gang members committed drive-by shootings in which one participant was the driver and one participant was the shooter was relevant to the issues of Petitioner's intent and involvement as a conspirator and an aider and abettor. *See People v. Superior Court (Quinteros),* 13 Cal.App.4th 12, 20–21, 16 Cal.Rptr.2d 462 (1993) ("[t]he circumstances from which a conspiratorial agreement may be inferred include the conduct of defendants in mutually carrying out a common illegal purpose, the nature of the act done, the relationship of the parties and the interests of the alleged conspirators"; "common gang membership may be part of circumstantial evidence supporting the inference of a conspiracy") (citations, internal quotations and brackets omitted). Testimony that gang members feared retaliation if they reported crimes to police or testified against gang members was relevant to the issue of the credibility of various witnesses, including Ortiz. *See Johnson v. McGrath,* 2006 WL 2331006, at *20 (C.D.Cal. Aug.4, 2006) (gang evidence relevant to show some witnesses may have recanted statements incriminating petitioner due to fear of retaliation).

Moreover, Stevens' testimony was not unduly prejudicial. The jury found the gang enhancement allegations not true, undercutting any contention that Stevens' opinion or the information upon which it was based had any assertedly "inflammatory" effect on the issue of Petitioner's guilt. Under these circumstances, the failure to bifurcate the trial in connection with the gang expert's testimony did not render Petitioner's trial fundamentally unfair, or have any substantial and injurious effect on the verdict. *See Sandoval v. Calderon,* 241 F.3d at 772.

For the foregoing reasons, the Court of Appeal's rejection of Petitioner's challenge to the trial court's failure to bifurcate the trial in connection with the gang expert's testimony was not contrary to, or an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on Ground Three of the Petition.

## IV. *Petitioner's Challenge to the Trial Court's Use of CALJIC 3.01 Does not Merit Habeas Relief.*

The trial court instructed the jury on aiding and abetting using CALJIC 3.01, which was California's standard aiding and abetting instruction at the time of Petitioner's trial:

A person aids and abets the commission of a crime when he or she:

(1) With knowledge of the unlawful purpose of the perpetrator, and

(2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and

(3) By act or advice aids, promotes, encourages or instigates the commission of the crime.

A person who aids and abets the commission of a crime need not be present at the scene of the crime.

Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting.

Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting. (R.T. 2733; C.T. 129).

 Petitioner contends the challenged instruction permitted the jury to convict Petitioner of attempted murder on an aiding and abetting theory without finding beyond a reasonable doubt that Petitioner knew of Chavez' intent or that Petitioner harbored the intent to commit or facilitate the attempted murder (Pet. Mem., pp. 49–50; Traverse, pp. 12–13). The Court of Appeal rejected Petitioner's challenge to the instruction, ruling that the instruction correctly defined the mental state of an aider and abettor, as set forth in *People v. Beeman, supra* (Respondent's Lodgment D, pp. 12–13; *People v. Ramirez,* 2005 WL 2365217, at *8).

 "[I]nstructions that contain errors of state law may not form the basis for federal habeas relief." *Gilmore v. Taylor,* 508 U.S. 333, 342, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993); *see also Estelle v. McGuire,* 502 U.S. at 71–72, 112 S.Ct. 475 ("the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief"); *Dunckhurst v. Deeds,* 859 F.2d 110, 114 (9th Cir.1988) (instructional error "does not alone raise a ground cognizable in a federal habeas corpus proceeding"). When a federal habeas petitioner challenges the validity of a state jury instruction, the issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire,* 502 U.S. at 72, 112 S.Ct. 475; *Clark v. Brown,* 450 F.3d 898, 904 (9th Cir.), *cert. denied,* 549 U.S. 1027, 127 S.Ct. 555, 166 L.Ed.2d 423 (2006). The court must evaluate the alleged instructional error in light of the overall charge to the jury. *Middleton v. McNeil,* 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004); *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Villafuerte v. Stewart,* 111 F.3d 616, 624 (9th Cir.1997), *cert. denied,* 522 U.S. 1079, 118 S.Ct. 860, 139 L.Ed.2d 759 (1998).

 Petitioner's claim fails for several reasons. First, "due process—independent of state law—does not require that an

aiding and abetting charge contain a distinct instruction regarding specific intent." *Willard v. People of the State of California*, 812 F.2d 461, 463 (9th Cir.1987) (citation omitted) (instruction which stated that aider and abettor must have knowledge of perpetrator's unlawful purpose, but failed to state that aider and abettor must act with intent or purpose of committing, encouraging, or facilitating the commission of the offense, did not violate due process); *see Nye & Nissen v. United States*, 336 U.S. 613, 618, 69 S.Ct. 766, 93 L.Ed. 919 (1949) (instruction that one who "aids, abets, counsels, commands, induces, or procures the commission of an act is as responsible for that act as if he committed it directly," without further elaboration regarding intent of aider and abettor, adequate under federal aiding and abetting statute).

Second, and in any event, the challenged instruction expressly told the jury that the jury could convict Petitioner of attempted murder on an aiding and abetting theory only if the jury determined that Petitioner both knew of Chavez' unlawful purpose and acted with the intent or purpose of committing or encouraging or facilitating the commission of the offense. This instruction constituted a correct statement of California law. *See People v. Prettyman*, 14 Cal.4th at 259, 58 Cal.Rptr.2d 827, 926 P.2d 1013 ("When the offense charged is a specific intent crime, the accomplice must 'share the specific intent of the perpetrator'; this occurs when the accomplice 'knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime.' "); *People v. Beeman*, 35 Cal.3d at 550–51, 199 Cal.Rptr. 60, 674 P.2d 1318. In these circumstances, the use of CALJIC 3.01 did not render Petitioner's trial fundamentally unfair. *See Spivey v. Rocha*, 194 F.3d 971, 976 (9th

Cir.1999), *cert. denied*, 531 U.S. 995, 121 S.Ct. 488, 148 L.Ed.2d 461 (2000) (aiding and abetting instruction consistent with California law did not violate due process).

For the foregoing reasons, the Court of Appeal's rejection of Petitioner's claim of instructional error was not contrary to, or an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on Ground Four of the Petition.

## V. *Petitioner's Challenge to the Admission of Evidence of the Gun and Secret Compartment in Petitioner's Car Does Not Merit Habeas Relief.*

### A. *Background*

At the time of Petitioner's arrest, Petitioner denied having a secret compartment in his car, saying he normally hid his gun under the dashboard (R.T. 1214–15, 1218). The police dismantled the dashboard but found nothing unusual (R.T. 1215). After Ortiz told police about the secret compartment on December 26, 2003, however, the police found and opened the secret compartment, discovering a loaded nine millimeter handgun (R.T. 969, 1218). Although the gun had been submitted for a ballistics analysis, the police had not received the analysis by the time of trial (R.T. 984–85, 1219). A fingerprint analysis of the gun yielded no distinguishable fingerprints (R.T. 1220). Officer Allen testified he did not know if any of the casings located at the scene came from the gun found in Petitioner's car, the car was impounded six days after the shooting, and Officer Allen did not know when the gun was placed in the secret compartment (R.T. 985). Officer Allen also testified, on cross-examination, that there was no phys-

ical evidence linking the gun to a crime (R.T. 1221).

Petitioner's counsel did not object to the challenged evidence until the conference regarding exhibits which occurred near the end of trial, at which counsel unsuccessfully raised a relevance objection (R.T. 2809–11).

### B. *Discussion*

■ Petitioner contends the evidence of the secret compartment and gun in Petitioner's car was irrelevant and prejudicial. The Court of Appeal rejected Petitioner's claim, ruling that any objection to the admission of the evidence was untimely, and that, in any event, the admission of the evidence was not prejudicial (Respondent's Lodgment D, pp. 13–14); (*People v. Ramirez*, 2005 WL 2365217, at *8). The Court of Appeal reasoned that there was no possibility the jury confused Petitioner's gun with the guns used in the case, and that evidence that Petitioner had a gun hidden in his car was "far less inflammatory than the facts regarding [Petitioner's] participation in the attempted murder of Orlando" (Respondent's Lodgment D, p. 14; *People v. Ramirez*, 2005 WL 2365217, at *8).

■ Habeas relief is not available for an alleged error in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. at 67–68, 112 S.Ct. 475. "Thus, whether or not the admission of evidence is contrary to a state rule of evidence, a trial court's ruling does not violate due process unless the evidence is of such quality as necessarily prevents a fair trial." *Windham v. Merkle*, 163 F.3d at 1103 (citation and internal quotations omitted); *see also Romano v. Oklahoma*, 512 U.S. 1, 10, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994) ("[t]hat the evidence may have been irrelevant as a matter of state law, however, does not render its admission federal constitutional error [citation]"); *Johnson v. Sublett*, 63 F.3d 926, 931 (9th Cir.), *cert. denied*, 516 U.S. 1017, 116 S.Ct. 582, 133 L.Ed.2d 504 (1995) (argument that admission of wooden clubs found at defendant's house was unconstitutional due to lack of evidence linking clubs to crimes "presents state-law foundation and admissibility questions that raise no federal habeas issues") (citation omitted).

The admission of the challenged evidence did not deny Petitioner a fair trial. There was no evidence that the gun found in Petitioner's car was used in the shootings. No rational juror could have found, based on the evidence, that the gun found in Petitioner's car was used in connection with the crimes of which Petitioner was convicted. To the extent Petitioner argues the challenged evidence inflamed the jury by suggesting Petitioner's propensity to commit the crimes, Petitioner's claim fails. As previously discussed, the United States Supreme Court has never held that the introduction of prior bad act evidence to show propensity to commit the current crime violates due process. *See Estelle v. McGuire*, 502 U.S. at 75 n. 5, 112 S.Ct. 475. Therefore, Petitioner may not obtain habeas relief on his challenge to the admission of alleged propensity evidence under the standard of review set forth in 28 U.S.C. section 2254(d). *See Mejia v. Garcia*, 534 F.3d at 1046; *Alberni v. McDaniel*, 458 F.3d at 864.

For the foregoing reasons, Petitioner is not entitled to habeas relief on Ground Five of the Petition.[5]

---

5. In his "Request for Leave to Conduct Discovery," Petitioner seeks a court order allowing discovery of the alleged ballistics report concerning the gun found in Petitioner's car, presumably to show the gun was not used in the crimes. However, there was no evidence

## VI. Petitioner's Claims of Ineffective Assistance of Trial and Appellate Counsel Lack Merit.

### A. Governing Legal Standards

To establish ineffective assistance of counsel, Petitioner must prove: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("*Strickland*"). A reasonable probability of a different result "is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The court may reject the claim upon finding either that counsel's performance was reasonable or the claimed error was not prejudicial. *Id.* at 697, 104 S.Ct. 2052; *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir.2002) ("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.") (citation omitted). For purposes of habeas review under 28 U.S.C. section 2254(d), *Strickland* sets forth clearly established Federal law as determined by the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. at 391, 120 S.Ct. 1495 (citation and quotations omitted).

Review of counsel's performance is "highly deferential" and there is a "strong presumption" that counsel rendered adequate assistance and exercised reasonable professional judgment. *Williams v. Woodford*, 384 F.3d 567, 610 (9th Cir.2004), *cert. denied*, 546 U.S. 934, 126 S.Ct. 419,

163 L.Ed.2d 319 (2005) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). The court must judge the reasonableness of counsel's conduct "on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. The court may "neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight." *Karis v. Calderon*, 283 F.3d 1117, 1130 (9th Cir.2002), *cert. denied*, 539 U.S. 958, 123 S.Ct. 2637, 156 L.Ed.2d 655 (2003) (citation and quotations omitted); *see Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted). The test is "only whether some reasonable lawyer ... could have acted, in the circumstances, as defense counsel acted." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir.) (citations and quotations omitted), *rev'd on other grounds*, 525 U.S. 141, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998); *see also Babbitt v. Calderon*, 151 F.3d 1170, 1173–74 (9th Cir.1998), *cert. denied*, 525 U.S. 1159, 119 S.Ct. 1068, 143 L.Ed.2d 72 (1999) (relevant inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable) (citation and quotations omitted); *Morris v. California*, 966 F.2d 448, 456–57 (9th Cir.), *cert. denied*, 506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992) (if the court can conceive of a reasonable tactical reason for counsel's action or inaction, the court need not determine the actual explanation). Petitioner bears the burden to

at trial that the gun was used in the crimes, and the detective who found the gun testified he had no physical evidence connecting the gun to the crimes. Therefore, because Petitioner has not shown good cause for the requested discovery, Petitioner's request for discovery is denied. *See Bittaker v. Woodford*,

331 F.3d 715, 728 (9th Cir.2003) (en banc), *cert. denied*, 540 U.S. 1013, 124 S.Ct. 536, 157 L.Ed.2d 424 (2003) (discovery in habeas proceedings available only on a showing of good cause); Rule 6(a), Rules Governing Section 2254 Cases in the United States District Courts.

"overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (citation and quotations omitted).

Petitioner raised his claims of ineffective assistance of trial and appellate counsel in his habeas corpus petitions filed in the California Supreme Court (*see* Respondent's Lodgments G, I). The California Supreme Court denied those petitions with citations indicating that the court did not reach the merits of Petitioner's claims.[6] Therefore, this Court's review is *de novo.* See *Pinholster v. Ayers,* 525 F.3d at 756.

### B. *Discussion*

For the reasons discussed below, Petitioner's claims of ineffective assistance of trial and appellate counsel lack merit.

**1. *Trial Counsel's Alleged Failure to Obtain a Ballistics Report on the Gun Found in the Secret Compartment of Petitioner's Car***

Petitioner contends trial counsel ineffectively failed to obtain a ballistics report on the gun found in the secret compartment of Petitioner's car (Pet.Mem., p. 61). According to Petitioner, had counsel done so, counsel would have learned that the gun found in the secret compartment of Peti-

tioner's car was not the gun used to shoot Ortiz (Pet.Mem., p. 61).

A reasonable attorney in the position of Petitioner's counsel could have concluded that it was unnecessary to obtain a ballistics report on the gun found in the secret compartment of Petitioner's car. As indicated above, there was no evidence indicating this gun was used in the shootings. Hence, counsel did not act unreasonably in failing to obtain a ballistics report.

Moreover, even if counsel had obtained such a report, and even if the report showed that the gun found in the secret compartment of Petitioner's car was not used to shoot Ortiz, Petitioner has failed to demonstrate any reasonable probability of a different outcome. The jury knew the gun found in the secret compartment was not the gun used to shoot Ortiz, and still convicted Petitioner. Therefore, Petitioner has not shown *Strickland* prejudice.

**2. *Trial Counsel's Alleged Failure to Explore the Circumstances Surrounding Ortiz' Hospital Interview with Police and Ortiz' Written Response to the Interviewers' Questions***

▮ Petitioner contends trial counsel "made no effort to challenge the circumstances surrounding the creation" of the

---

**6.** The California Supreme Court denied Petitioner's first habeas corpus petition with citations to *People v. Duvall,* 9 Cal.4th 464, 474, 37 Cal.Rptr.2d 259, 886 P.2d 1252 (1995) (*"Duvall"*), and *In re Swain,* 34 Cal.2d 300, 304, 209 P.2d 793 (1949), *cert. denied,* 338 U.S. 944, 70 S.Ct. 425, 94 L.Ed. 582 (1950), 340 U.S. 938, 71 S.Ct. 485, 95 L.Ed. 677 (1951), and 342 U.S. 914, 72 S.Ct. 361, 96 L.Ed. 684 (1952) (*"Swain"*) (Respondent's Lodgment H). These citations refer to the California rule that, to meet his or her initial burden of pleading adequate grounds for relief, a California habeas petitioner must state fully and with particularity the facts upon which relief is sought. *See Duvall,* 9 Cal.4th

at 474, 37 Cal.Rptr.2d at 265, 886 P.2d 1252; *Swain,* 34 Cal.2d at 303–04, 209 P.2d 793; *see also Gaston v. Palmer,* 417 F.3d 1030, 1036–39 (9th Cir.2005), *modified* 447 F.3d 1165 (9th Cir.2006), *cert. denied,* 549 U.S. 1134, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007) (describing pleading requirements of *Duvall* and *Swain* ).

The California Supreme Court denied Petitioner's second habeas corpus petition with citations to *Duvall, Swain,* and *In re Clark,* 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993) (absent justification, successive and/or untimely petitions will be summarily denied) (*see* Respondent's Lodgment J).

statement Ortiz wrote in the hospital in response to questions by police (Pet. Mem., pp. 63–64; *see* Petition, Ex. E).

Petitioner's counsel elicited Ortiz' testimony, on cross-examination, that Ortiz had no recollection of writing the statement (R.T. 660). In light of this testimony, counsel reasonably could have made the tactical decision not to press Ortiz further concerning the interview or the statement. Additionally, on cross-examination of Officer Allen, Petitioner's counsel did question Allen concerning the circumstances surrounding the hospital interview (R.T. 986–92). Furthermore, although Petitioner alleges the interview was "improperly suggestive" (*see* Petition, p. 64), Petitioner does not allege in what respect the interview was suggestive. Officer Allen testified that Ortiz wrote the statement in response to two questions: "Who shot you?" and "Who was with him?" (R.T. 981–82, 990–92). These were not "suggestive" questions, and nothing in the record indicates the interview otherwise was suggestive. Counsel cannot be faulted for failing to make a meritless argument. *See Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.), *cert. denied*, 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989) ("[T]he failure to raise a meritless legal argument does not constitute ineffective assistance of counsel"; citation and internal quotations omitted).

Petitioner also contends counsel failed to challenge "the validity of the fraudulent copy of the document which had not been signed or approved by Ortiz as a certified hand-written 'Original Document'" (Pet. Mem., p. 64). At trial, when the prosecutor showed Ortiz the original of the document in question, People's Exhibit 8, Ortiz said it was not in his handwriting (R.T. 629, 631). The prosecutor showed Ortiz an enlarged copy of the document, People's Exhibit 9, and asked whether it was an enlargement of the original, to which Ortiz replied: "Guess so, yes" (R.T. 630). At trial, Ortiz purported not to recall writing the document, and said he had been under medication during the hospital interview (R.T. 630–32).

Following a break during the cross-examination of Ortiz, the prosecutor discovered that People's Exhibit 8, which had been left on the witness stand, was missing (R.T. 652–53). The court said that if the exhibit did not turn up, the court would use a copy (R.T. 653).

On cross-examination of Ortiz, Petitioner's counsel referred to People's Exhibit 9, and asked Ortiz if he had any recollection of having written "those things on a piece of paper" (R.T. 660). The court asked if counsel was referring to People's Exhibit 9, and counsel confirmed he was referring to People's Exhibit 9 "which is an enlargement of People's 8" (R.T. 660). Later, Officer Allen identified People's Exhibit 9 as an enlargement of the statement Ortiz wrote during the hospital interview (R.T. 980–81).

At the close of trial, the clerk indicated that People's Exhibit 8 was still missing (R.T. 2431). Petitioner's counsel objected to the admission of People's Exhibits 8 and 9, saying they had not been authenticated by the writer, but by "an interested party which is the detectives" (R.T. 2432–33). The court overruled the objections and admitted the exhibits (R.T. 2433). Later, the prosecutor withdrew People's Exhibit 8, which apparently still had not been located (R.T. 2708).

Nothing in the record indicates People's Exhibit 9 was a "fraudulent" copy of People's Exhibit 8 (which mysteriously disappeared during a break in Ortiz' testimony). Hence, Petitioner's counsel did not act ineffectively in failing to challenge People's Exhibit 9 on this ground. Furthermore, contrary to Petitioner's contention, counsel

did object to the introduction of People's Exhibits 8 and 9 on authentication grounds, and the court overruled the objections. Petitioner's contentions lack merit.

### 3. Trial Counsel's Asserted Failure to Object to Alleged Prosecutorial Misconduct in Closing Argument

At trial, the prosecutor asked Officer Allen whether Petitioner's statement to police was "characterized as a confession," and Allen replied: "Yes" (R.T. 1011). Later, while discussing the admissibility of allegedly exculpatory statements Petitioner assertedly made to police, Petitioner's counsel argued, *inter alia,* that Petitioner's statement was not a confession (R.T. 1237–40). The court struck the question to Allen and Allen's answer set forth above, and instructed the jury to disregard the question and answer and not to consider them for any purpose (R.T. 1242).

During closing argument, the prosecutor referred to Petitioner's statement to police as a "confession," and several times stated that Petitioner had "confessed" (R.T. 2758, 2769, 2771, 2829). Petitioner contends his counsel rendered ineffective assistance by failing to object to these statements.

 To the extent Petitioner contends the prosecutor violated a court order by referring to Petitioner's statement as a "confession" in closing argument, Petitioner is mistaken. Contrary to Petitioner's contentions, the court neither struck Petitioner's statement itself nor instructed the jury to disregard Petitioner's statement. Nor did the court forbid counsel from referring to the statement as a "confession." The court only struck the question and answer described above. In any event, counsel reasonably could have concluded, as a tactical matter, that interrupting the prosecutor's closing argument with objections to the characterization of Petitioner's

statement as a confession could harm Petitioner's case, by highlighting the term "confession" or simply by irritating jurors. *See Clabourne v. Lewis,* 64 F.3d 1373, 1383 (9th Cir.1995) (failure to object to prosecutor's references to petitioner's competency to stand trial not ineffective; "competent counsel might have many valid reasons for failing ... to interrupt opposing counsel during opening and closing statements").

 Moreover, Petitioner has not shown that counsel's failure to object prejudiced Petitioner. The court instructed the jury on the definitions of both a confession and an admission, and told the jurors that they were "the exclusive judges as to whether the defendant made a confession or an admission and if so whether that statement is true in whole or in part" (R.T. 2730; C.T. 122). Furthermore, the judge also instructed the jury that the statements of counsel were not evidence, and told the jury: "[i]f anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions" (R.T. 2722). The jury is presumed to have followed its instructions. *See Weeks v. Angelone,* 528 U.S. at 226, 120 S.Ct. 727. Under these circumstances, Petitioner has not shown a reasonable probability that, but for defense counsel's failure to object to the prosecutor's "confession" references in closing argument, the outcome would have been different.

### 4. Appellate Counsel's Alleged Failure to Raise Issues on Appeal

The standards set forth in *Strickland* govern claims of ineffective assistance of appellate counsel. *See Smith v. Robbins,* 528 U.S. 259, 285–86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (*Strickland* standards apply to claim of ineffective assistance of appellate counsel); *Bailey v. Newland,* 263

F.3d 1022, 1028 (9th Cir.2001), *cert. denied*, 535 U.S. 995, 122 S.Ct. 1556, 152 L.Ed.2d 479 (2002) (same). Appellate counsel has no constitutional obligation to raise all non-frivolous issues on appeal. *See Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir.1997). "A hallmark of effective appellate counsel is the ability to weed out claims that have no likelihood of success, instead of throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court." *Id.* Appellate counsel's failure to raise an issue on direct appeal cannot constitute ineffective assistance when "the appeal would not have provided grounds for reversal." *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir.2001) (citation omitted).

■ Petitioner complains of appellate counsel's failure to raise on appeal the issues of trial counsel's alleged ineffectiveness in assertedly failing to investigate the case adequately, failing to object to allegedly inadmissible evidence, and failing to challenge supposed prosecutorial misconduct (Pet.Mem., p. 67). Petitioner does not allege what sort of investigation counsel should have performed, what objections counsel allegedly should have made to what evidence, or what challenges counsel allegedly should have made to what supposed prosecutorial misconduct. Such conclusory allegations are insufficient to merit habeas relief. *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir.1995), *cert. denied*, 517 U.S. 1143, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

■ To the extent Petitioner argues that appellate counsel should have raised on appeal the claims of ineffective assistance of trial counsel alleged in the Petition, Petitioner's claim fails for several reasons. First, where analysis of a claim of ineffective assistance of trial counsel would necessitate recourse to matters outside the appellate record, California law requires that the claim be asserted in a petition for writ of habeas corpus, rather than on direct appeal. *See, e.g., People v. Mendoza Tello*, 15 Cal.4th 264, 267–68, 62 Cal.Rptr.2d 437, 933 P.2d 1134 (1997); *People v. Pope*, 23 Cal.3d 412, 426–28, 152 Cal.Rptr. 732, 590 P.2d 859 (1979). "[B]ecause, in general, it is inappropriate for an appellate court to speculate as to the existence or nonexistence of a tactical basis for a defense attorney's course of conduct when the record on appeal does not illuminate the basis for the attorney's challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a habeas corpus proceeding, in which the attorney has the opportunity to explain the reasons for his or her conduct." *People v. Wilson*, 3 Cal.4th 926, 936, 13 Cal.Rptr.2d 259, 838 P.2d 1212 (1992), *cert. denied*, 507 U.S. 1006, 113 S.Ct. 1648, 123 L.Ed.2d 269 (1993); *see also People v. Frye*, 18 Cal.4th 894, 979–80, 77 Cal. Rptr.2d 25, 959 P.2d 183 (1998), *cert. denied*, 526 U.S. 1023, 119 S.Ct. 1262, 143 L.Ed.2d 358 (1999) (citations and internal quotations omitted) ("a reviewing court will reverse a conviction on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission") (citations and internal quotations omitted). Here, appellate counsel reasonably could have determined that certain of Petitioner's claims of ineffective assistance of trial counsel could not properly be raised on direct appeal. These claims included trial counsel's alleged failure to obtain a ballistics report on the gun found in the secret compartment of Petitioner's car, and counsel's alleged failure to explore the circumstances

surrounding Ortiz' hospital interview with police and Ortiz' written response to the interviewers' questions. Petitioner cannot claim ineffective assistance of appellate counsel in failing to raise these issues in a habeas corpus petition, for Petitioner enjoyed no right to counsel in state post-conviction collateral proceedings. *See Murray v. Giarratano,* 492 U.S. 1, 7–10, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); *Pennsylvania v. Finley,* 481 U.S. 551, 556, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Wainwright v. Torna,* 455 U.S. 586, 587–88, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982); *Cook v. Schriro,* 538 F.3d 1000, 1027 (9th Cir.2008).

In any event, for the reasons previously discussed in the Court's analysis of Petitioner's claims of ineffective assistance of trial counsel, appellate counsel reasonably could have determined that it would be futile to assert any of Petitioner's ineffectiveness claims on appeal. *Strickland* did not require appellate counsel to advance meritless arguments. *See Shah v. United States,* 878 F.2d at 1162. Additionally, and for the same reasons, Petitioner has not shown a reasonable probability of a different outcome had appellate counsel advanced the arguments suggested by Petitioner. *See Featherstone v. Estelle,* 948 F.2d 1497, 1507 (9th Cir.1991) (where trial counsel's performance did not fall below the *Strickland* standard, "petitioner was not prejudiced by appellate counsel's decision not to raise issues that had no merit") (footnote omitted). Hence, Petitioner has not shown *Strickland* prejudice.

## VII. *Petitioner's Claims of Prosecutorial Misconduct Lack Merit.*

 Prosecutorial misconduct merits habeas relief only where the misconduct " 'so infec[ted] the trial with unfairness as to make the resulting conviction a denial of due process.' " *Greer v. Miller,* 483 U.S.

756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (citation omitted); *Bonin v. Calderon,* 59 F.3d 815, 843 (9th Cir.1995), *cert. denied,* 516 U.S. 1051, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996) ("To constitute a due process violation, the prosecutorial misconduct must be so severe as to result in the denial of [the petitioner's] right to a fair trial.").

Petitioner raised his claims of prosecutorial misconduct in his habeas corpus petitions filed in the California Supreme Court. As indicated above, the California Supreme Court denied those petitions without reaching the merits of Petitioner's claims. Therefore, this Court's review is *de novo. See Pinholster v. Ayers,* 525 F.3d at 756.

### A. *Alleged Presentation of an Assertedly False Document or Documents*

Petitioner contends the prosecutor introduced false evidence, *i.e.,* Ortiz' written statement (People's Exhibit 8) and the enlarged copy (People's Exhibit 9) (*see* Pet. Mem., pp. 68–69).

 The prosecution's knowing use of false evidence or testimony to obtain a conviction can violate due process. *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *see also United States v. Sherlock,* 962 F.2d 1349, 1364 (9th Cir.), *cert. denied,* 506 U.S. 958, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992). To prevail on a claim that prosecutorial misconduct allowed the introduction of false evidence or testimony, Petitioner must show: "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony [or evidence] was actually false, and (3) ... the false testimony [or evidence] was material." *United States v. Zuno–Arce,* 339 F.3d 886, 889 (9th Cir.2003) (citation omitted).

Although Petitioner challenges the written statement on the grounds that Ortiz' interview at the hospital assertedly was suggestive, as indicated above, Petitioner does not allege in what respect the interview assertedly was suggestive, and the record does not support any such assertion. Petitioner points out that Ortiz testified at trial concerning memory failures, and said he did not recall writing the statement at the hospital. However, "[t]he fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false." *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir.1997); *see also United States v. Jordan*, 150 F.3d 895, 900 (8th Cir.1998), *cert. denied*, 526 U.S. 1010, 119 S.Ct. 1153, 143 L.Ed.2d 219 (1999) (" 'A challenge to evidence through another witness or prior inconsistent statements is insufficient to establish prosecutorial use of false testimony.' "; citation omitted). The question whether witnesses lied or erred in their perceptions or judgments is properly left to the jury. *See United States v. Zuno–Arce*, 44 F.3d 1420, 1422–23 (9th Cir.), *cert. denied*, 516 U.S. 945, 116 S.Ct. 383, 133 L.Ed.2d 306 (1995); *see also United States v. Scheffer*, 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) ("A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' ") (original emphasis; quoting *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974)). Because Petitioner has not shown the challenged documents were false, Petitioner is not entitled to habeas relief on this claim. *See Cook v. Schriro*, 538 F.3d at 1018 (rejecting claim where petitioner did not show challenged testimony was false).

**B. Alleged Presentation of Officer Allen's Assertedly Perjured Testimony Concerning Petitioner's Statement to Police**

Petitioner contends the prosecutor presented Officer Allen's allegedly perjured testimony concerning the content of Petitioner's statement to police (Pet.Mem., pp. 69–71). As previously discussed, Allen characterized Petitioner's statement as a "confession" (R.T. 1011). Allen also testified:

> He [Petitioner] confessed to the encounter over at Boxer's house, chasing him. He described the route he took. He described dropping Payasso [Chavez] off. Then he described turning, going back to pick him up. He saw Payasso lying on the ground, then he took off.

(R.T. 1225).

Petitioner contends that his statement to police was not a confession because Petitioner never admitted guilt (Pet.Mem., p. 69). Petitioner further asserts that he did not tell police that he "followed, chased, dropped off, or intend[ed] to pick up" (apparently referring to Chavez) (Pet.Mem., p. 69).

Petitioner has not submitted any evidence to support his claim that Allen's testimony concerning Petitioner's statement was perjured. Allen called the statement a "confession," but also testified that Petitioner "confessed" to certain acts and events, indicating Allen used the word not in a legal sense, but as a synonym for "admission" (*see* R.T. 125). The transcript of Petitioner's interview was not introduced at trial, and is not in the record. However, Officer Hahn testified at some length regarding Petitioner's statement, including the following:

> [The prosecutor]: Did the defendant say, "Grand. He, Orlando, turns, makes a left down that street on 103rd. He turned, boom, so Paya [Chavez] tell me

'turn, turn, and I—and I don't want to get close, so when I hit right there by the entrance of the shopping center"?

A. Yes.

Q. That's what he said?

A. Yes

Q. So Paya [Chavez] told him to turn?

A. Yes.

Q. And he turned?

A. Correct.

Q. And the defendant said that he didn't want to get too close—

A. That's correct.

Q. —to the victim's car?

A. Yes.

Q. And then you said, "right," and the defendant said, "Like right there. He jumped out. He jumped out? Paya jumped out. And I was like—like he was, like, two cars ahead. I don't know who was in the—in the passenger exactly, but I know there was somebody else in the passenger with a gun."

Was that the defendant's statement?

A. Yes.

Q. And did he further say, "And Paya just started running and boom, boom, boom, so I ducked"?

A. Yes.

Q. Did you ask him, "Okay, when you say, 'boom, boom, boom,' who was shooting"?

A. I did.

Q. And what was his response?

A. "Paya."

Q. You said, "okay"?

A. I did.

Q. And what was his response?

A. Said Paya was shooting at him.

Q. You said, "okay"?

A. I did.

Q. And what was the defendant's response?

A. He said he seen Paya—seen Paya—well, he shot like three times, stated he pushed the gas.

Q. No. Read his words exactly.

A. Yes. "I seen Paya. He shot like three times, and I pushed the gas. And then I hit Century, I hit Century, and I make a left towards Compton."

Q. You asked him, "so you passed him"?

A. I did.

Q. And what was his response?

A. "Yeah, I was like two cars behind them then, and Paya got out."

Q. And you asked him, "right"?

A. Yes.

Q. And what was his response?

A. "I was on this side. And I hear him, boom, boom, boom, boom boom, and I get down like this. And—and I heard probably like no more than four shots when I hit Century, boom, and I hit Century."

Q. And then what did he say?

A. "And when—when I—when I passed them, I hear—I see the passenger with a gun in Orlando's car."

Q. So he told you that Payasso [Chavez] shot three times before he saw someone in Orlando's car with a gun?

A. Correct.

Q. And he told you that he made that block and came back to where—around the location where he dropped off Payasso?

A. Yes. He stated he turned left on Century, left on Compton.[7]

(R.T. 1536–39).

The quoted portions of Petitioner's statements reasonably could be construed

---

7. Petitioner's counsel objected to the charac-

terization that Petitioner "dropped off" Cha-

to indicate Petitioner followed or chased Ortiz' car, allowed Chavez to exit the car,[8] saw Chavez shoot at Ortiz, and circled around the block to return to Chavez. Petitioner falls far short of demonstrating Allen committed perjury. Therefore, Petitioner has not shown the prosecutor knowingly presented any assertedly perjured testimony.

### C. Alleged Reference to Petitioner's Statement as a "Confession" in Closing Argument

Petitioner's claim that the prosecutor assertedly committed misconduct in closing argument by referring to Petitioner's statement to police as a "confession" lacks merit. As discussed above, the court instructed the jurors on the definitions of a "confession" and "admission," and instructed the jurors that they were the "exclusive judges" as to whether Petitioner made a confession or an admission, and if so whether that statement was true in whole or in part (R.T. 2730). Furthermore, the judge also instructed the jury that the statements of counsel were not evidence, and that if the attorneys said anything concerning the law which conflicted with the court's instructions, the jury was required to follow the court's instructions (R.T. 2722). In these circumstances, any alleged misconduct consisting of using the word "confession" in closing argument did not render Petitioner's trial fundamentally unfair.

### D. Alleged Failure to Produce Ballistics Evidence Concerning the Gun Found in the Secret Compartment of Petitioner's Car

■■ The suppression by the prosecution of evidence favorable to an accused violates due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) *("Brady")*. The three "essential elements" of a *Brady* claim are: "The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; [the] evidence must have been suppressed by the State, either wilfully or inadvertently; and prejudice must have ensued." *Banks v. Dretke,* 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (citation and internal quotations omitted).

■ At trial, Officer Allen testified that the gun recovered from the secret compartment of Petitioner's car was submitted for fingerprint and ballistics analysis (R.T. 1219). Allen said the ballistics report had not yet come back from the lab (R.T. 1219). Petitioner has submitted no evidence indicating the prosecution ever received any ballistics report before or during Petitioner's trial, or that any ballistics report would have been materially favorable to the defense. Therefore, Petitioner's *Brady* claim fails.

### RECOMMENDATION

For the reasons discussed above, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying and dismissing the Petition with prejudice.

Oct. 16, 2008.

---

vez, but the record shows no ruling on the objection (R.T. 1539).

8. Whether a car driver's stoppage that has the effect of permitting a passenger to exit the car does or does not constitute "dropping off" the passenger seems little more than a question of semantics.